J-S29018-17

2017 PA Super 400

| IN RE: ROSEMARY C. FORD INTER VIVOS QTIP TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: ROSEMARY C. FORD | |
| | No. 3019 EDA 2016 |

Appeal from the Order August 25, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2014-X2918

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

OPINION BY SOLANO, J.                                    **FILED DECEMBER 18, 2017**

Appellant Rosemary C. Ford appeals from the *en banc* order of the Orphans' Court Division of the Court of Common Pleas of Montgomery County that dismissed for lack of standing her exceptions to the order entered by the orphans' court on April 7, 2016. That order confirmed the account dated November 3, 2015, of the Rosemary C. Ford *Inter Vivos* QTIP Trust, as prepared by her former husband, Appellee George Ford, as trustee.[1] We affirm the orphans' court's holding that Rosemary does not have standing to require George, as trustee, to make the Trust's property productive.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] To avoid confusion, we shall refer to the parties in this opinion by their first names.

On January 18, 2007, during the parties' marriage, Rosemary created the Rosemary C. Ford *Inter Vivos* QTIP Trust[2] ("the Trust") through a Trust Agreement that named George as trustee. ***See*** Trust Agreement, 1/18/07, at 1. The Trust holds two commercial properties located on East Mermaid Lane in Wyndmoor, Montgomery County ("the East Mermaid Properties"), which are leased to a family business, George Ford & Sons, Inc., and operated by George's son, Tom Ford. ***Id.*** at 20, Schedule "A." According to the Pennsylvania Department of State's Corporations Bureau, George Ford & Sons, Inc. is an active and operating business. The main dispute in this case concerns production of income (rent) from these properties.

In Paragraph III, the Trust Agreement makes George the Trust's primary beneficiary, but it contains provisions making Rosemary a contingent beneficiary. Paragraph III states, in relevant part:

(A)    During the lifetime of [George]:

(1)   Trustees shall pay over the net income, if any, to [George], in quarterly or more frequent periodic installments. . . .

(3) [George] may at any time by written notice, require [the] Trustees either to make any non-productive property of this trust productive or to convert such non-productive property to productive property within a reasonable time.

---

[2] "QTIP" is an acronym for "Qualified Terminable Interest Property." ***Jones v. Wilt***, 871 A.2d 210, 215 (Pa. Super. 2005). "Congress created QTIP in 1981 to permit decedents to control the ultimate disposition of their estates while providing for the support and maintenance of their surviving spouses." ***Estate of Spencer v. Comm'r of Internal Revenue***, 43 F.3d 226, 227 (6th Cir. 1995) (citation omitted).

(B)   Upon the death of [George], survived by [Rosemary], then the remaining trust assets shall constitute a separate trust for the benefit of [Rosemary], to be administered as follows: . . .

(1)   Trustees shall pay over the net income, if any, to [Rosemary], in quarterly or more frequent periodic installments. . . .

(3) [Rosemary] may at any time by written notice, require [the] Trustees either to make any non-productive property of this trust productive or to convert such non-productive property to productive property within a reasonable time.

*Id.* at 1 ¶ III(A)(1), (3) & (B)(1), (3).  The Trust is irrevocable.  *Id.* at 13 ¶ X.   It contains a Spendthrift Provision that prevents a creditor of an individual beneficiary from accessing the income and principal of the Trust. *Id.* at 4 ¶ V.[3]

On January 22, 2009, Rosemary filed a divorce action against George. Orphans' Ct. Op., 4/7/16, at 2.[4]  On April 2, 2009, she filed a separate action for support.[5]

On June 5, 2009, Rosemary and George entered into an Agreement in Principle for a "temporary resolution" of the support action.  The Agreement

_____

[3] A spendthrift clause is designed to "insulate the assets of . . . trusts from the incursions of creditors until such time as those assets, either as principal or interest, are delivered into the hands of the beneficiary." *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002).  As discussed later in the text, it is subject to an exception for claims by a creditor seeking payment under a support order.  20 Pa. C.S. § 7743(b).  Paragraph V of the QTIP Trust provides:  "The interests of beneficiaries hereunder in the income and principal of this Trust shall be free from anticipation, voluntary or involuntary alienation, assignment, pledge or obligations and shall not be subject to attachment, execution or other legal process."

[4] The divorce action is at Montgomery County Docket No. 2009-01518.

[5] The support action is at Montgomery County Docket No. 2009-09445.

provided in Paragraph 2 that "[George] shall pay to [Rosemary] one-half of the net rental income from the [East Mermaid Properties] less [George]'s mortgage payment on the marital residence, which will come off the top.'" Agreement in Principle ¶ 2.  The Agreement further provided that the parties would use Michael Fingerman as an arbitrator "for any issues that they cannot resolve, including but not limited to the amount of support that should be paid." *Id.* ¶ 6.  On June 9, 2009, the trial court entered an order making the Agreement in Principle an order of the court.

On October 4, 2010, the parties resolved their divorce action by an arbitration conducted by Mr. Fingerman.  In a lengthy document called "Arbitration Conclusions/Award," Mr. Fingerman summarized various matters relating to the parties and then set forth an award relating to division of the parties' property, alimony, and counsel fees.  His arbitration award was then incorporated into the parties' divorce decree dated January 21, 2011. Orphans' Ct. Op., 4/7/16, at 2.

The arbitration document made reference to the parties' equal division of net income from the East Mermaid Properties under the Agreement in Principle in the support action, and it said that the parties had agreed to arbitrate "all issues relating to the dissolution of the parties' marriage."  Arb. Concl./Award at 1-2 (Concl. § I.C.2., D.1).  In a summary of the parties' "Net Marital Assets," Mr. Fingerman noted that the East Mermaid Properties were listed as having a fair market value for insurance purposes of more than $2 million and that net income was being used to pay off a home equity

- 4 -

line of credit on the marital residence, with the balance being divided between the parties pursuant to the Agreement in Principle. He also noted that rent due under a consumer price index inflator clause in the Properties' lease had not yet been paid. *Id.* at 6-7 (Concl. § II.A.4.).

In the section of the arbitration document titled "Award," Mr. Fingerman first included a section titled "Property Division" in which he said that "the net marital assets shall be divided between the parties as follows." He then listed various assets, including the following entry:

| Asset/Liability | Husband | Wife |
|---|---|---|
| Real Estate | | |
| . . . | | |
| East Mermaid Lane (income/in-kind) | ---- | ---- |

Arb. Concl./Award at 18 (Award § 1.A.). Under a section called "Effectuation," he said that "the foregoing distribution shall be effectuated as follows" and included this paragraph regarding the East Mermaid Properties:

> **East Mermaid Lane/QTIP Trust/Rent:** [George] shall continue to pay [Rosemary] one-half (1/2) of all rental income received on account of [the] East Mermaid [Properties], provided, however, that commencing with the first monthly rental payment received following the date of this Award, [George] shall no longer deduct any amounts paid by him on account of the home equity line of credit on [the parties' former marital residence]. In the event [George] pre-deceases [Rosemary], all such rental income shall be paid to [Rosemary] pursuant to the QTIP Trust, and in the event [Rosemary] pre-deceases [George], all such rental income shall be paid to [George] pursuant to the QTIP Trust. Promptly following the date of this Award, [George] shall obtain any retroactive rental due on account of the Consumer Price Index (CPI) adjustment set forth in the lease on East Mermaid Lane, and any such retroactive income shall be divided equally between the parties. All future rent, including appropriate CPI adjustments, shall be

divided equally between both parties until either party's death as set forth above.

*Id.* at 21 (Award, § I(B)(1)(d)). There was no section of the Award addressing support. The section of the Award dealing with "Alimony" stated:

> In consideration of all factors including, without limitation, the equal division of net income received from East Mermaid Lane, the potential rent available to [Rosemary] from [other properties], and [George]'s earned income, perquisites and excess social security income, commencing on the first (1st) day of the month following the date of this Award, and on the first (1st) day of each month thereafter, [George] shall pay to [Rosemary], as alimony, the sum of $1,750 per month ("Alimony Amount"). . . . [George]'s obligation for payment of the Alimony Amount shall cease upon the first to occur of (1) [Rosemary]'s death; (2) [George]'s death; (3) [Rosemary]'s remarriage; (4) [Rosemary]'s cohabitation as then defined by applicable caselaw . . .; or (5) Upon [George]'s retirement and the termination of [George]'s receipt of any earned income from George Ford & Sons, Inc.

*Id.* at 22 (Award § II.).

On October 28, 2013, George notified Rosemary that he needed "to temporarily cease payment of rent to the Irrevocable Trust effective immediately" and that "the 50% of the rental income which is paid to you will not be paid effective with payment due November 1, 2013." He added, "At this time it is uncertain when rental payment will be resumed." He also told Rosemary that he was retiring from George Ford & Sons and would no longer be receiving a weekly salary, so that "hence alimony will cease." Pet'r's Resp. to Resp't's Mot. to Dismiss, 2/23/15, Ex. C (Letter from George Ford to Rosemary C. Ford (Oct. 28, 2015)).

On August 18, 2014, Rosemary filed in the Orphans' Court a petition for citation, contending that she is a contingent beneficiary of the Trust and that George had failed to collect any or adequate rent for the use of the East Mermaid Properties. Pet. for Citation, 8/18/14, at 1-2 ¶¶ 1, 5, 9. The petition asked that the orphans' court order "an accounting and audit" of the Trust. *Id.* at 2, *ad damnum* clause. On October 7, 2014, George responded to the petition and contended that Rosemary "has no standing to make complaint while [George] remains sole income beneficiary while living." Resp. to Pet. for Citation, 10/7/14, at 3 ¶ 14.

On January 30, 2015, George filed a motion to dismiss Rosemary's petition, asserting that Rosemary "is not a named beneficiary of the Trust nor did [the Arbitration] Award give beneficiary status to [Rosemary]." Mot. to Dismiss Pet'r's Pet., 1/30/15, at 3 ¶ 2. The motion to dismiss also explained the history of the parties' divorce and the arbitration award. *Id.* at ¶ 3. George reiterated his contention that Rosemary "lack[ed] standing to pursue this matter," asserting: "simply put[,] since [Rosemary] is not a beneficiary named in the Trust she has no standing to bring this action in this [orphans' c]ourt." *Id.* at ¶¶ 5, 7.

On August 13, 2015, the orphans' court entered an order granting Rosemary's petition for citation, denying George's motion to dismiss that petition, and ordering an accounting. Order, 8/13/15, at 1-2.[6] The order

---

[6] The Uniform Trust Act states: "A trustee shall promptly respond to a reasonable request . . . by a beneficiary of an irrevocable trust for

*(Footnote Continued Next Page)*

stated that Rosemary "is a creditor with a claim in support against [George], the primary beneficiary of the Trust, and therefore has standing to request an Account." *Id.* at 1. As the court later explained, it made this decision at a time when it did not yet have a copy of the Arbitration Award. Orphans' Ct. Op., 4/7/16, at 3.

On November 3, 2015, George prepared and filed an Account Summary for the Trust, which concluded that the Trust had a balance of $1,506,860.07. On December 4, 2015, Rosemary filed objections to the accounting. In it, she contended that the accounting included "Receipts of Income for the [East Mermaid Properties] which show numerous months and considerable lengths of time where no Rent monies were collected or accounted for." Objs. to Accounting, 12/4/15, at 2 ¶ 7. She added that the accounting "includes inconsistent payments and underpayments." *Id.* at ¶ 8. The objections continued:

> 9. On October 31, 2013 Trustee [George] advised Petitioner [Rosemary] that the Trust was going to forego the collection of rent on the two commercial properties which were being leased to George Ford & Sons, Inc.
>
> 10. Petitioner [Rosemary] and her counsel have made multiple demands that the Trustee [George] enforce the Trust lease with the tenant and either collect rent, or begin eviction proceedings in an effort to make the property productive. Trustee [George] has refused to do so.

*(Footnote Continued)* ───────────────

information related to the trust's administration." 20 Pa.C.S. § 7780.3(a). Under the Trust Agreement, the Ford Trust is irrevocable. Trust Agreement, 1/18/07, at 13 ¶ X. As a contingent beneficiary, Rosemary is a "beneficiary" under this section. 20 Pa.C.S. § 7703.

11.     Trustee [George]'s refusal to collect rent has made the two commercial properties non-productive and his actions are diminishing the value of the assets and the estate to the detriment of all beneficiaries.

12.     Based on information and belief Petitioner [Rosemary] avers that the November 3, 2015 Account Summary was improperly reviewed and verified.  The Verification signature of the Trustee [George] on page 18 bears no resemblance to the signature which appears consistently on every prior document signed by George Ford.
. . .
13.     Upon information and belief the Trustee [George] is no longer competent to handle his own affairs and his actions show that he has breached his fiduciary duty owed to the Trust and the beneficiaries.

*Id.* at 3 ¶¶ 9-13.  The objections requested that the orphans' court:  (1) order George as trustee "to make payments to the Trust for the unpaid rents, making the Trust whole"; and (2) remove George as trustee.  *Id.* at 3.[7]

George denied Rosemary's objections.  George's Answer to Rosemary's Objs. to Accounting, 1/8/16, at 2 ¶¶ 7-13.  George insisted that "[t]he

_____

[7] Rosemary did not request removal of George in any other filings before the orphans' court, and the orphans' court's decision did not address Rosemary's request that George be removed.  Rosemary did not list the removal issue in her exceptions to the orphans' court's decision, and she does not specifically list the removal issue in her statement of issues in her appellate brief.  That brief does state that, "[a]s a contingent beneficiary, [Rosemary] has standing" to "have [George] removed [as trustee] for conflict of interest," Rosemary's Brief at 9, but the brief contains no further argument on that issue.  Due to Rosemary's failure to make a supported appellate argument regarding removal of George as trustee, we deem the issue waived.  *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities."), *appeal denied*, 69 A.3d 603 (Pa. 2013); *Lackner v. Glosser*, 892 A.2d 21 (Pa. Super. 2006) (same); *Estate of Haiko v. McGinley*, 799 A.2d 155 (Pa. Super. 2002) (same).

- 9 -

Accounting" and "[t]he Verification speak[] for [themselves]." *Id.* at ¶¶ 7-8, 12.  He also stated that he never advised Rosemary that the Trust was going to forego the collection of rent and asserted that Rosemary "is not a beneficiary of the Trust and therefore has no standing to demand eviction." *Id.* at ¶¶ 9-10.  He asserted that "[r]ent is paid" and the East Mermaid Properties "are not non-productive."  *Id.* at ¶ 11.  He averred that he "is competent" and that Rosemary "has neither provided nor produced any Expert Medical Reports supporting her opinion."  *Id.* at ¶ 13.  George concluded that Rosemary's objections "are groundless" and "irrelevant" and "should be dismissed with prejudice." *Id.*

On January 8, 2016, the orphans' court held a conference on Rosemary's objections.  At the conclusion of the conference, the orphans' court determined that the issue of Rosemary's standing as a support order creditor — an issue raised by George — needed additional attention, and the court ordered the parties to brief the issue.

On April 7, 2016, the orphans' court entered an order confirming the account and dismissing Rosemary' objections for lack of standing.  The orphans' court explained that when it had previously found that Rosemary had standing, it did not have a copy of the Arbitration Award.  Orphans' Ct. Op., 4/7/16, at 3.[8]  Upon receipt and review of the Arbitration Award, it reached a different conclusion:

_____

[8] The record is unclear as to when the orphans' court first received a copy of the Arbitration Award.  The first appearance of the Arbitration Award in the

*(Footnote Continued Next Page)*

- 10 -

For our purposes it is significant that the award with respect to this commercial rental income is contained within section I of the award, which relates to equitable distribution of property, not in section II of the award, which concerns alimony and support.

. . . Rosemary Ford has a contingent beneficial interest in the event that she survives her husband, at which time she would become entitled to the income and discretionary distributions of principal. However, she is not a current beneficiary of either the income or principal. . . . [D]uring George's lifetime, only he is entitled to the distributions of income, and Rosemary has no standing to raise the questions posed by her objections. Rosemary Ford's counsel insist that she has been added as a current income beneficiary of the [T]rust by virtue of the agreement in principle. This is not correct. The agreement resolved the parties' martial issues and did not change the beneficiaries of the [T]rust or add Rosemary as a new beneficiary.

Thus, the question presented is whether Rosemary C. Ford is a creditor of George Ford, the income beneficiary, pursuant to a court order for support. Having now reviewed the arbitrator's award dated October 4, 2010, th[e orphans' c]ourt concludes that [Rosemary] is a creditor of [George], and has a claim against the income he receives in his individual capacity from the [T]rust. However, she is not a creditor pursuant to an order for support. Rather she is a creditor pursuant to an order for equitable distribution of property. The spendthrift provision of the trust is enforceable against her as a creditor, and she does not qualify for the exception to enforceability of a spendthrift provision under 20 Pa. C.S.A. § 7743(b)(2)[, which makes a spendthrift provision inapplicable to a claim for support] . . . For these reasons, the objectant lacks standing to raise the instant objections and they are dismissed.

*Id.* at 4-5.

On April 26, 2016, Rosemary filed the following exceptions to the order

of April 7, 2016:

*(Footnote Continued)* ——————————

certified record is as an exhibit to George's Brief in Support of Adjudication filed on June 1, 2016, **after** the orphans' court entered its order confirming the account and dismissing Rosemary's objections on April 7, 2016.

- 11 -

> Petitioner . . . respectfully takes exception to the following findings in the April 7, 2016 Adjudication:
>
> 1.    That Petitioner lacks standing to bring the present action against the Trustee.
>
> 2.    That Petitioner is not a beneficiary under Pennsylvania Law.
>
> 3.    That Petition[er] is not an income beneficiary.
>
> 4.    That Petition[er] does not have a substantial, direct and immediate interest in the trust.
>
> 5.    That Petitioner cannot enforce the terms of the Trust.

Exceptions Pursuant to Pa.O.C. R. 7.1, 4/26/16, at 1 ¶¶ 1-5.    In her accompanying brief in support of her exceptions, Rosemary contended that "she has been a beneficiary of the Trust, under the Pennsylvania [Uniform Trust Act (UTA)[9]], at all times, that she has standing under Pennsylvania law to challenge the Trustee's actions, and that the arbitration award had no effect on Petitioner's standing as beneficiary."    Br. in Supp. of Exceptions, 4/26/16, at 5.    She added that her "status as a creditor is irrelevant to her standing as a beneficiary."  *Id.* at 7.

After argument before the orphans' court *en banc* on June 6, 2016, the court entered an order dismissing Rosemary's exceptions for lack of standing.    Order Sur Exceptions, 8/25/16.    On September 21, 2016, Rosemary filed a notice of appeal to this Court, in which she presents the following issues:

---

[9] 20 Pa.C.S. §§ 7701-7799.3.

- 12 -

1.     Did the Honorable [Orphans'] Court commit an error of law when it entered the Order of April 7, 2016 confirming the account and dismissing the exceptions to the adjudication ruling that [Rosemary] did not have standing as [Rosemary] is a creditor of [George as] Trustee and not of the Trust?

2.     Did the Honorable [Orphans'] Court commit an error of law or overlook evidence when it entered the Order of April 7, 2016 confirming the account and dismissing the exceptions to the adjudication ruling that [Rosemary] did not have standing?

Rosemary's Brief at 4.  Though framed as two questions, Rosemary's issues both challenge the correctness of the orphans' court's holding that she lacked standing to object to George's accounting.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Rellick-Smith v. Rellick**, 147 A.3d 897, 901 (Pa. Super. 2016) (citation omitted).

Rosemary's objections to the accounting asserted that George had improperly failed to require payment of rents on the East Mermaid Properties.  She claimed that George was required to collect rent and thereby to force those properties to be made productive and claimed that she had standing to enforce that requirement.  As a beneficiary of the trust (albeit a contingent one), Rosemary normally would have standing "to maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." **In re Francis Edward McGillick Found.**, 642 A.2d 467, 469 (Pa. 1994); **see** 20 Pa.C.S. § 7703 ("beneficiary" under UTA includes contingent beneficiary).  But Rosemary's rights and interests under the Trust are subject to the terms of the Trust Agreement, 20 Pa. C.S.

§ 7705, and an examination of the Ford Trust Agreement discloses that Rosemary has no current rights as a beneficiary to compel production of income from the East Mermaid Properties.

Paragraph III(A)(3) of the Trust Agreement provides that only George, as the Trust's current beneficiary, has the power to make the Trust productive. It states that during his lifetime, George "may at any time by written notice, require [the] Trustees either to make any non-productive property of this trust productive or to convert such non-productive property to productive property within a reasonable time." Trust Agreement, 1/18/17, at 1 ¶ III(A)(3). The Agreement gives a similar right to Rosemary only "[u]pon the death of [George], survived by [Rosemary]." ***See id.*** at 1 ¶ III(B)(3). Thus, because the terms of the trust deprive Rosemary of any right to require the East Mermaid Properties to be made productive during George's lifetime, we agree with the orphans' court that Rosemary lacked standing as a trust beneficiary to pursue this remedy through her objections to George's accounting.[10]

The orphans' court also considered whether Rosemary had standing to compel George to make the East Mermaid Properties productive as a result of the June 5, 2009 Agreement in Principle in Rosemary's support action and

---

[10] In her brief, Rosemary argues that she has standing not only as a contingent beneficiary, but also as the Trust's settlor. The brief does not explain how Rosemary's status as settlor gives her any additional rights, however, and we discern no additional basis for standing under this argument. It was Rosemary, as settlor, who created the provisions of the Trust Agreement giving George the sole right during his lifetime to require Trust property to be made productive.

the 2010 Arbitration Award that was incorporated into her divorce decree. Those agreements gave Rosemary a right to one half of the rent collected from the East Mermaid Properties. However, as the orphans' court correctly observed, Rosemary's rights under the 2009 Agreement and 2010 decree are as George's creditor, and the spendthrift provision in Paragraph V of the Trust Agreement prevents Rosemary, as George's creditor, from reaching George's property under the Trust unless — pursuant to Section 7743 of the Fiduciaries Code, 20 Pa. C.S. § 7743 — Rosemary sought to do so as a creditor under an order for maintenance or support. Orphans' Ct. Op., 7/13/15, at 3 (quoting 20 Pa. C.S. § 7743).[11] Although the orphans' court initially concluded that Rosemary could proceed against George as a creditor for support, the court later changed that view after it read the Arbitration Award. Apparently, the court read that Award as superseding the 2009 Agreement in Principle in the support action and making Rosemary's right to rent from the East Mermaid Properties part of an equitable distribution of the parties' marital property — not part of a support order. ***See id.***

---

[11] Section 7743(b) provides:

> A spendthrift provision is unenforceable against:
> > . . . .
> > (2) any other person who has a judgment or court order against the beneficiary **for support or maintenance**, to the extent of the beneficiary's interest in the trust's income[.]

20 Pa. C.S. § 7743(b) (emphasis added).

- 15 -

Significantly, Rosemary has not appealed the portion of the orphans' court's decision relating to her rights under the Agreement in Principle in the support action and under the Arbitration Award and divorce decree. Rosemary's brief is devoted exclusively to an argument that she has standing as a contingent beneficiary of the trust and as the trust's grantor, and she argues: "Any discussion of the status of the Appellant as a creditor to the Trustee and not the trust is simply not relevant to the matter and should not have been considered by the Court below." Rosemary's Brief at 13. Because Rosemary disclaims any reliance on her standing as a creditor in this appeal, we do not address it. We affirm the orphans' court's order regarding rent from the East Mermaid Properties solely on the basis of its holding that Rosemary lacks standing under the Trust Agreement to raise that issue.

Order affirmed.

Judge Lazarus joins the opinion.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:12/18/2017