J-A04015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF GERTRUDE FOX, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BARBARA FOX | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1974 EDA 2019 |

Appeal from the Order Entered June 6, 2019
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2007-X0589

BEFORE:   PANELLA, P.J., STRASSBURGER, J.[*], and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED APRIL 03, 2020**

Barbara Fox ("Barbara") appeals from the June 6, 2019 order[1] of the Orphans' Court of the Court of Common Pleas of Montgomery County that sustained the preliminary objections of Bruce Fox and Jonathan Fox ("Trustees") and held that Barbara is not a beneficiary or creditor of the trust ("the Trust") established under the will of Gertrude Fox ("Decedent").[2] In the same order, the court dismissed Barbara's objections to the petition for adjudication of the accounting of the Trust. Barbara now claims the orphans'

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The order, dated June 5th, was entered the following day.

[2] Barbara Fox is the second wife of Decedent's husband, Norman Fox ("Norman").

court erred in finding that she lacked standing to challenge the accounting. Based on the following, we affirm.

The orphans' court set forth the underlying facts and procedural history as follows:

The decedent, Gertrude Fox, died on February 6, 2007. Her will dated November 13, 1995, and the codicil thereto dated October 3, 2006, were admitted to probate by the Montgomery County Register of Wills on February 20, 2007, and letters testamentary were issued to her surviving spouse, Norman Fox. Article 5 of the will sets forth the provisions of the residuary trust here at issue ("the Gertrude Testamentary Trust") as follows: 1) the entire net income shall be accumulated and added to principal; 2) the trustees shall pay a regular unitrust distribution to Norman in each calendar year and also shall pay a tax distribution if any of the unitrust distribution carries out taxable income to Norman; 3) the trustees may make discretionary distributions to Norman, provided that, while Norman is the trustee, such discretionary distributions to Norman shall be limited to amounts necessary to support him in his accustomed manner of living, and while he is serving as trustee, Norman may also make distributions to Gertrude's issue of such sums as Norman deems advisable; 4) in addition, in any calendar year, Norman may withdraw $5,000 or 5% of principal; and 5) Norman has a special power of appointment which he may exercise only in a valid will executed after Gertrude's death.

Article 8 of the will provides that the trustee may withhold any payment of income or principal which would otherwise be made to Norman if he is a disabled individual and the trustees, in their sole and absolute discretion shall expend or apply the withheld payment for the benefit of Norman as they deem advisable. The definition of a disabled individual in Article 10 of the will includes one who has been adjudicated an "incompetent."

The will named Norman as the trustee and the two sons of Gertrude and Norman, Bruce and Jonathan, as successors should Norman no longer be able or willing to serve. Norman resigned as trustee on or about November of 2015 when his sons began to serve. On November 23, 2016, Bruce and Jonathan filed a petition to have Norman declared an incapacitated person. On December

21, 2016, Norman and John Severson, the agent under his power of attorney, filed a petition to compel an account from the successor trustees. On October 16, 2017, a final decree was entered finding Norman to be totally incapacitated and appointing Intervention Associates, Inc., as guardian of his person and Pennsylvania Trust Company as guardian of his estate.

Bruce and Jonathan were directed to file an account and they did so on April 3, 2019. Pennsylvania Trust Company and Barbara Fox, Norman's second wife whom he married on November 22, 2008, filed objections to the account. Bruce and Jonathan filed preliminary objections to Barbara's objections, raising the issue of standing. By order dated June 6, 2019, the undersigned sustained the preliminary objections and dismissed Barbara's objections to the trustees' account.

Orphans' Court Opinion, 8/29/2019, at 1-3 (footnotes omitted). Specifically, the orphans' court found Barbara had no standing to question the administration of the Gertrude Testamentary Trust because she is neither a beneficiary nor a creditor. This timely appeal followed.[3]

In her sole argument on appeal, Barbara contends she has standing to object to the Trustees' administration of the Trust, and therefore, the orphans' court erred in granting the Trustees' preliminary objections.

We are guided by the following:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the

---

[3] On July 11, 2019, the orphans' court ordered Barbara to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Barbara filed a concise statement on July 29, 2019. The court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 29, 2019.

appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

*Shafer Elec. & Constr. v. Mantia*, 67 A.3d 8, 10 (Pa. Super. 2013). When we review an order sustaining preliminary objections, we treat as true all well pled material facts and reasonable inferences contained in the opposing party's pleading. *See In re Nadzam*, 203 A.3d 215, 220 (Pa. Super. 2019).

By way of background,

Barbara's claim to have standing to object to the [T]rustees' actions in this matter centers on the terms of the antenuptial agreement she and Norman entered into on November 10, 2008. That agreement provides, in pertinent part, that Barbara has the right to occupy certain real property in Palm Beach Gardens, Florida, that the property cannot be sold without her consent and, if it is sold, the proceeds must be used to provide a unitrust for Barbara's benefit, or at her request, be reinvested into a new residence. The agreement also provides for the Gertrude Testamentary Trust to own the Florida property which appears to be borne out by the copy of the deed attached to Barbara's motion for reconsideration of the order dismissing her objections. Nevertheless, the [T]rustees contend the property is owned by an *inter vivos* trust (the "Appointed Trust") that Norman established in 1995 for the benefit of [Decedent] and into which [Decedent] appointed assets in her will. Bruce and Jonathan, who are also the trustees of the Appointed Trust, have filed an account of their administration of that trust and have included the Florida property as one of its assets. Further complicating these matters is the fact that Norman executed an irrevocable trust ("the Family Trust") on November 11, 2008, the day after the antenuptial agreement with Barbara was signed. Barbara argue[d][4] Norman clearly intended the Family Trust, not the Gertrude Testamentary Trust, and not the Appointed Trust to hold the Florida property.

_____

[4] Barbara has initiated an action in Florida in an attempt to have the property titled in the name of the Family Trust. Barbara has also filed a complaint against Norman in the Civil Division of this Court at docket no. 2018-07263 seeking

> to enforce her rights under the couple's antenuptial agreement.

***Id.***, at 3 (citation and footnote omitted).

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Rellick-Smith v. Rellick***, 147 A.3d 897, 901 (Pa. Super. 2016) (citation omitted). In Pennsylvania, standing is a principle designed to ensure only those who have a direct interest in a matter may litigate it. ***See Nadzam***, 203 A.3d at 220. Central to standing is the ideal that only those who have a substantial, direct and immediate interest in the outcome of litigation have standing to participate. ***See id***.

A person's interest is substantial if it is more than just the general interest of all citizens that the law be obeyed. ***See id***. The interest is direct if the claimed violation is causally connected to the asserted harm. ***See id***. The interest is immediate when the causal connection is neither remote nor speculative. ***See id***., at 220-221.

Relying on ***In re Francis Edward McGillick Foundation***, 642 A.2d 467 (Pa. 1994), and ***In re Milton Hershey School***, 911 A.2d 1258 (Pa. 2006), Barbara argues:

> It is irrelevant that [Barbara] is not a named beneficiary or creditor of the Trust, as she has a substantial, direct, and immediate interest in the Trust's administration … because Norman is obligated under the Agreement to (i) contribute to the

Living Fund[4] and (ii) provide certain rights to occupy the Florida property during her lifetime. The amount of Norman's contributions to the Living Fund are based on his income, which includes the distributions Norman receives from the Trust. The Trustees seek to amend the Will to remove the required unitrust distribution in favor of a lesser net rental income distribution to Norman. Further, the Trustees, by their own admission have failed to distribute the required unitrust amount to Norman to date and, instead, have distributed only the Trust's nominal net rental income to Norman. This unilateral decision by the Trustees in contravention of the Will's unambiguous terms significantly decreases Norman's contributions to the Living Fund, causing direct harm to [Barbara].

Appellant's Brief, at 13-14.

Barbara further asserts that she has a direct interest in the outcome the Trust's accounting because: (1) if it is determined that the Trust owns the Florida Property, then her right to occupy the residence will be adversely affected by the Trustees' continued attempts to sell the property without her consent; and (2) with any determination as to the required unitrust amount, the Florida Property's owner and/or the ability to sell the Florida Property could cause Barbara to immediately lose income derived from the Living Fund in addition to her right to occupy the property. ***See id.***, at 14.

_____

[4] The first amendment to Norman's and Barbara's antenuptial agreement provided that Norman and Barbara would maintain a joint checking account, referred to as a "Living Fund." **See** Preliminary Objections of Bruce Fox and Jonathan Fox to the Objections of Barbara Fox to the Petition of Bruce Fox and Jonathan Fox for Adjudication and Statement of Proposed Distribution, 5/31/2019, at Exhibit B (First Amendment to Antenuptial Agreement dated November 10, 2008).

Barbara alleges her interest is immediate as she has already suffered from the decreased value of the Living Fund because the Trustees admitted they were not making the required unitrust distributions to Norman. ***See id.*** Moreover, she argues her interest is not speculative:

> [T]here is no evidence to suggest that the Florida Property is owned by the Appointed Trust and not the Trust, as the Trustees claim. If it is determined that the Florida Property is not owned by the Fox Family Trust, there is more than a remote chance that the Florida Property could be owned by the Trust.

***Id.***

Barbara suggests that because the orphans' court did not summarily dismiss her response to the Trustees' preliminary objections, it believed that she, "at a minimum, has standing with respect to any trust that holds the Florida Property." ***Id.***, at 15. Furthermore, Barbara points to her numerous objections to the Trustees' First and Partial Account that were not asserted by the guardian of Norman's estate, including issues of self-dealing and mismanagement by Trustees. ***See id.*** She states, "To the extent the Trustees may have endeavored to address the issues raised by [Barbara] with the Guardian as part of their 'amended informal account,' such corrections only evidence the utility of [Barbara]'s involvement in this matter and, thus, her right to standing with respect to the Trust's administration." ***Id.***

In addressing the standing issue, the orphans' court first found that a determination as to ownership of the Florida property was not relevant to the

substantive claim. **See** Orphans' Court Opinion, 8/29/2019, at 3-4. Moreover,

the court opined:

> As noted in our order of June 5, 2019, Barbara has no standing to question the administration of the Gertrude Trust because she is neither a beneficiary nor a creditor. She is a potential creditor of Norman individually, not this trust, under the antenuptial agreement and a beneficiary of the Family Trust. Even if she had a liquidated claim against Norman at this time, she would have no standing to complain about the trustees[] not making payments to him from the Gertrude Testamentary Trust because of the spendthrift clause in Article Eight, paragraph 8.04.[5]
>
> Barbara cites **In re: Francis Edward McGillick Foundation**, 537 Pa. 194, 642 A.2d 467 (Pa. 1994) and **In re: Milton Hershey School**, 590 Pa. 35, 911 A.2d 1258 (Pa. 2006) for the propositions that one need not be a beneficiary or creditor to have standing to object to the actions of a trustee and one merely need show he is aggrieved by showing he or she has a substantial, direct and immediate interest in the outcome of the litigation. These cases involved the standing of parties other than the Attorney General, as *parens patriae* for charities, to participate in the affairs of charitable entities, and these analyses by the Supreme Court have little relevance to this matter. Much more instructive to us is the situation in **In re: Rosemary C. Ford Inter Vivos QTIP Trust**, 176 A.3d 992 (Pa. Super. 2017). There, during the parties' marriage, Rosemary created an irrevocable [Qualified Terminable Interest Property ("QTIP")] Trust of which her husband, George, was trustee and primary beneficiary and Rosemary was the contingent beneficiary. The trust had a spendthrift clause to prevent a creditor of a beneficiary from accessing the income and

_____

[5] Paragraph 8.04 provides:

> 8.04. <u>Protective Provisions</u>. No payment of income or principal hereunder shall be pledged, assigned, transferred, or sold, in any manner whatsoever, nor be in any manner liable in the hands of the trustees for the debts or liabilities of my husband.

Preliminary Objections of Bruce Fox and Jonathan Fox to the Objections of Barbara Fox to the Petition of Bruce Fox and Jonathan Fox for Adjudication and Statement of Proposed Distribution, 5/31/2019, at Exhibit A, 12.

principal. The trust held certain commercial real estate which was leased to a family business. The couple divorced and the parties reached an agreement which was memorialized in an arbitration award that equitably distributed the parties' assets. The agreement provided that [Rosemary] would share in the income generated by the trust's commercial properties. Eventually, [Rosemary] stopped receiving any rental income and she obtained a Court order compelling the filing of a trust account. After the account was filed and [Rosemary] filed objections, George filed preliminary objections raising lack of standing that were sustained. In dismissing [Rosemary]'s appeal, the Superior Court quoted the opinion of the Hon. Lois E. Murphy of this Court in support of her grant of the preliminary objections as follows:

> Rosemary Ford has a contingent beneficial interest in the event that she survives her husband, at which time she would become entitled to the income and discretionary distributions of principal. However, she is not a current beneficiary of either the income or principal.... [D]uring George's lifetime, only he is entitled to the distributions of income, and Rosemary has no standing to raise the questions posed by her objections. Rosemary Ford's counsel insist that she has been added as a current income beneficiary of the [T]rust by virtue of the agreement in principle. This is not correct. The agreement resolved the parties' marital issues and did not change the beneficiaries of the [T]rust or add Rosemary as a new beneficiary.

*Id.*, at 998. The Superior Court approved of the Orphans' Court's finding that the arbitration award was an equitable distribution award, not a support order that would have imbued [Rosemary] with the status of a creditor with standing to bypass the spendthrift clause under 20 Pa. C.S.A. 7743(b)(2).[5] The Superior Court also noted the trust gave the husband alone the right to compel the trustee to make the properties productive and stated that:

> Because the terms of the trust deprive Rosemary of any right to require the ... properties to be made productive during George's lifetime, we agree with the orphans' court that Rosemary lacked standing as a trust beneficiary to pursue this remedy through her objections to George's accounting.

- 9 -

*Id.*, at 999-1000.

_____

> [5] This section provides that a spendthrift provision is unenforceable against any other person who has a judgment or court order against the beneficiary for support or maintenance, to the extent of the beneficiary's interest in the trust's income.

_____

> Comparing the **Ford** matter to the instant matter, [Rosemary] was found to have no standing to pursue an action against the trustee even though she was a contingent beneficiary of the trust. Barbara is not a contingent beneficiary. [Rosemary] had a colorable argument that her arbitration award permitted her to bypass the spendthrift clause. Barbara does not allege she has a support order. Barbara is, at present, as was [Rosemary], a creditor of her husband with no present avenue of redress against the trustees of the Gertrude Testamentary Trust.

Orphans' Court Opinion, 8/29/2019, at 3-6.

We agree with sound legal reasoning of the orphans' court, and conclude its August 29, 2019 opinion properly disposes of the issue in this case. Pursuant to Uniform Trust Act ("UTA"),[6] the terms of a trust instrument generally prevail over any contrary provisions of the UTA. **See** 20 Pa.C.S.A. § 7705(a). Here, based on the unambiguous provisions of the Trust, Barbara is neither a named beneficiary nor a creditor. Additionally, unlike Rosemary in **In re: Rosemary C. Ford Inter Vivos QTIP Trust** ("**Ford**"), one cannot even consider Barbara a contingent beneficiary under the language of the

_____

[6] 20 Pa.C.S.A. §§ 7701 - 7790.3.

- 10 -

Gertrude Testamentary Trust. **See** 20 Pa.C.S.A. § 7703 ("beneficiary" under the Uniform Trust Act includes contingent beneficiary).

Furthermore, Barbara's reliance on **In re Francis Edward McGillick Foundation** and **In re Milton Hershey School** for the proposition that she does not have to be a beneficiary or creditor to have standing so long as she demonstrates that she has a substantial, direct, and immediate interest in the outcome of the litigation is misplaced. Both of those cases concern trusts created for the benefit of charitable organizations whereas here, the trust was created for the benefit of a spouse. **See McGillick Foundation**, 642 A.2d at 469-70; **Hershey School**, 911 A.2d at 1262

As the orphans' court points out, **Ford** is more applicable here, as this matter concerns a trust created for the benefit of a spouse. While Barbara is a purported creditor of Norman, she does not argue that a support or maintenance order is in place. In accordance with **Ford**, 176 A.3d at 1000, such an order would have bestowed upon Barbara the status of a creditor with standing to bypass the spendthrift clause in Paragraph 8.04 of the Gertrude Testamentary Trust pursuant to 20 Pa.C.S.A. § 7743(b)(2) ("A spendthrift provision is unenforceable against … any other person who has a judgment or court order against the beneficiary for support or maintenance, to the extent of the beneficiary's interest in the trust's income"). **See also In re Rosemary C. Ford Inter Vivos QTIP Tr.**, 176 A.3d at 1000. Therefore, we find Barbara's

assertions unpersuasive, and agree that she presently has no rights to object to an accounting of the Trust.

In addition, if we were to apply the substantial, immediate, and direct analysis test as set forth in **Nadzam**, Barbara would receive no relief. While Barbara's interest may be considered both substantial as it is more than just the general interest of all citizens and immediate because it is neither remote nor speculative, her interest is not direct as the alleged harm is not causally connected to the Trust. **See id.** Pursuant to the antenuptial agreement, she receives her funds from Norman, individually, and not from the Trust. In other words, there is no direct payment from the Trust to her. Therefore, Barbara does not have a direct interest that would afford her proper standing to challenge the accounting of the Trust.

Accordingly, we affirm on the basis of the court's August 29, 2019 opinion, and conclude the court did not err in granting the Trustees' preliminary objections.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/20

- 12 -