J-A28043-15

2016 PA Super 23

| JOHN J. DOUGHERTY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| PEPPER HAMILTON LLP, AMY B. GINENSKY, MICHAEL E. BAUGHMAN, PETER M. SMITH AND RAPHAEL CUNNIFF, | |
| Appellees | No. 2455 EDA 2014 |

Appeal from the Order Dated July 29, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2013 No. 00848

BEFORE:  GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

OPINION BY SHOGAN, J.:                    **FILED FEBRUARY 03, 2016**

Appellant, John J. Dougherty, appeals from the order granting summary judgment in favor of Pepper Hamilton LLP ("Pepper Hamilton"), and its attorneys Amy B. Ginensky, Michael E. Baughman, Peter M. Smith, and Raphael Cunniff (collectively "Appellees"), in this civil action alleging breach of fiduciary duty and breach of contract.  For the reasons that follow, we reverse and remand for further proceedings.

We summarize the protracted history of this case as follows.  On October 30, 2003, Appellant retained Pepper Hamilton to represent him in relation to a federal matter involving a grand jury subpoena he received.  Although Appellant was not the target of the grand jury investigation, an FBI

Affidavit was filed to secure a search of Appellant's residence ("the FBI Affidavit").[1] Appellant has alleged that he provided Pepper Hamilton unfettered access to documents during the firm's representation of Appellant. Also, counsel from Pepper Hamilton was present during the execution of the search warrant at Appellant's home in November of 2006.

Initially, the FBI Affidavit securing the search warrant was under seal, but, somehow, the FBI Affidavit inadvertently became attached to a document presented in an unrelated criminal matter involving an unrelated person named "Donald Dougherty, Jr." According to Appellant, on January 30, 2008, the federal government filed a response to Donald Dougherty Jr.'s motion to suppress evidence, which was entered as Document No. 27 on the federal criminal docket for the prosecution of Donald Dougherty, Jr. ("Document No. 27"). This filing was allegedly made under "restricted status." Civil Complaint, 2/13/13, at 7.[2] Document No. 27 referenced, as Exhibit "A," a copy of an affidavit by an FBI agent in support of the issuance of a search warrant for Donald Dougherty, Jr.'s premises.

---

[1] Pepper Hamilton represented Appellant until February 2007, and Appellant paid Pepper Hamilton approximately $200,000.00 for legal services.

[2] Documents filed on the federal court's PACER system are publicly available for a fee to those who have registered for and received a PACER account. However, in his memorandum of law in support of his response to Pepper Hamilton's motion for summary judgment, Appellant asserts that a document on "restricted status" is unavailable to anyone but the court and the parties. Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, at 5, n.5.

However, the affidavit that was attached to Document No. 27 as Exhibit "A" was actually the FBI Affidavit in support of the search of Appellant's premises. *Id*.

At least some of the documents in Donald Dougherty Jr.'s case were filed under seal and, thus, not accessible to the public. Subsequently, however, in April of 2008, certain documents in Donald Dougherty Jr.'s case were unsealed by Judge Robreno of the United States District Court for the Eastern District of Pennsylvania. More specifically, Judge Robreno's April 11, 2008 order authorized the eastern district Clerk of Court to lift the seal on Documents 31, 32, 48 and 38. Appellant alleges that Document No. 27 was also, albeit mistakenly, removed from "restrictive status" around this time. Complaint, 2/11/13, at 8 ¶ 24.

When Appellant was running for a vacant seat in the Pennsylvania Senate in April of 2008, the Philadelphia Inquirer ("the Inquirer") published several articles about Appellant. The articles implied that Appellant had engaged in criminal conduct in the past and was likely to do so again if elected to the Pennsylvania Senate. In March of 2009, Appellant initiated a defamation suit against the Inquirer in state court. In 2011, Pepper Hamilton assumed representation of the defense for the Inquirer in the defamation suit filed by Appellant. In 2012, Pepper Hamilton informed the trial court that the defense of the defamation action would rely on information relating to the federal investigation in which Pepper Hamilton

had previously represented Appellant. In 2013, Appellant moved to have Pepper Hamilton removed as defense counsel in his defamation action against the Inquirer. The trial court denied the motion to disqualify Pepper Hamilton. On appeal this Court reversed the decision of the trial court and remanded the matter for the entry of an order barring Pepper Hamilton and its attorneys from representing the Inquirer. **Dougherty v. Philadelphia Newspapers, LLC, et al.**, 85 A.3d 1082 (Pa. Super. 2014).

On December 10, 2012, while Pepper Hamilton and its attorneys were still representing the Inquirer, the firm filed a motion for summary judgment in the defamation suit and included in the attached exhibits a copy of the FBI Affidavit. On December 12, 2012, the Inquirer then published a front-page article, which included detailed references to the FBI Affidavit.[3]

---

[3] Appellant filed a motion to strike the FBI Affidavit and place it under seal. The trial court initially granted the motion to place the FBI Affidavit under seal, but Judge Rau then lifted the seal when she denied the motion to strike and granted summary judgment in favor of the Inquirer on April 28, 2014. This Court subsequently affirmed the trial court's grant of summary judgment in the defamation lawsuit. **Dougherty v. Philadelphia Newspapers, L.L.C., et al.**, 1635 EDA 2014, ___ A.3d ___, (unpublished memorandum) (Pa. Super. filed October 14, 2015), *reargument denied*, ___ A.3d ___ (Pa. Super. December 23, 2015). Appellant also sought injunctive relief in the United States District Court for the Eastern District of Pennsylvania with regard to the sealing of the FBI affidavit in state court, to no avail. **United States of America v. Donald Dougherty, Jr., John J. Dougherty, Appellant**, No. 14-3498 (3rd Cir. filed February 12, 2015) (unpublished opinion), *cert. denied*, 136 S.Ct. 110 (2015). However, on December 17, 2012, the district court granted the federal government's request to have the FBI Affidavit removed from the [Donald Doughty Jr.] file. **Id.** at *3.

On February 11, 2013, Appellant initiated the instant action by filing a complaint against Appellees alleging breach of fiduciary duty and breach of contract. Appellant alleged that, in representing the Inquirer in the defamation suit, Pepper Hamilton acted against the interests of Appellant, its former client. The trial court has summarized the subsequent procedural history of this case as follows:

> [Appellees] filed Preliminary Objections on April 3, 2013. These Preliminary Objections were overruled by this Court by Order dated June 18, 2013. An Answer was filed [by Appellees] on July 8, 2013. On May 27, 2014, after some discovery was conducted and a Revised Case Management Order entered, [Appellees] filed a Motion for Summary Judgment. An Answer in response to the Motion for Summary Judgment was filed [by Appellant] on June 27, 2014. A Reply in Support of the Motion for Summary Judgment was filed [by Appellees] on July 2, 2014. A Supplemental Memorandum in Support of the Motion for Summary Judgment was filed [by Appellees] on July 25, 2014, and a Supplemental Memorandum in Opposition was filed [by Appellant] on July 29, 2014. By Order dated July [29], 2014, [and entered on the docket on July 30, 2014,] Summary Judgment was granted.

Trial Court Opinion, 12/23/14, at 1. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Whether the Trial Court erred in granting [Appellees'] motion for summary judgment on the mistaken basis that, because Pepper's breach of fiduciary duty was also a violation of the Pennsylvania Rules of Professional Conduct, [Appellant] cannot assert a claim against Pepper as a matter of law.

B. Whether the Trial Court erred in holding that [Appellees] were entitled to summary judgment because, although they used information against [Appellant] that is substantially related to

their former representation of him, that information is publicly available and thus cannot form the basis of a disloyalty claim.

C. Whether the Trial Court prematurely granted [Appellees] motion for summary judgment where the parties had exchanged limited written discovery and taken no depositions.

Appellant's Brief at 2-3.

Each of Appellant's issues challenges the propriety of the trial court's determination granting summary judgment. In reviewing matters of summary judgment, we are governed by the following well-established principles:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **Chenot v. A.P. Green Services, Inc.**, 895 A.2d 55, 60-61 (Pa. Super. 2006) (citation omitted).

> Motions for summary judgment implicate the plaintiff's proof of the elements of his cause of action. **Chenot**, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make

out a prima facie cause of action or defense. **Chenot**, 895 A.2d at 61.

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. **Id**. We will disturb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." **Chenot**, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. **Id**. (citation omitted).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. **Chenot**, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. **Id**. at 61-62 (citation omitted).

**Continental Casualty Company v. Pro Machine**, 916 A.2d 1111, 1115-1116 (Pa. Super. 2007).

A legal malpractice claim based on breach of contract, "involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." **Zokaites Contracting Inc. v. Trant Corp.**, 968 A.2d 1282, 1287 (Pa. Super. 2009). With respect to a legal malpractice claim based on breach of contract, this Court has stated the following:

[T]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide … her best

- 7 -

efforts and fails to do so, an action in assumpsit will accrue. An attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

*Fiorentino v. Rapoport*, 693 A.2d 208, 213 (Pa. Super. 1997) (citations omitted).

With respect to a breach of fiduciary duty claim, "a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Basile v. H & R Block, Inc.*, 777 A.2d 95, 102 (Pa. Super. 2001). The leading case in Pennsylvania discussing breach of a fiduciary duty by an attorney with regard to a conflict of interest is *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992). In *Maritrans*, our Supreme Court upheld the trial court's issuance of a preliminary injunction preventing Pepper Hamilton from representing its former clients' competitors. The Court found that a cause of action for breach of a fiduciary duty against a law firm was actionable where the firm acquired confidential information during the course of its representation. In discussing actionability for breach of a fiduciary duty, our Supreme Court reiterated the following long-standing principles:

> Activity is actionable if it constitutes breach of a duty imposed by statute or by common law. Our common law imposes on attorneys the status of fiduciaries *vis a vis* their clients; that is, attorneys are bound, at law, to perform their

fiduciary duties properly. Failure to so perform gives rise to a cause of action. It is "actionable." . . .

At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable.

*Maritrans*, 602 A.2d at 1283.

The *Maritrans* Court highlighted that Pepper Hamilton "was furnished with substantial confidential commercial information" and "came to know the complete inner-workings of the company along with Maritrans' longterm objectives, and competitive strategies[.]" *Id*. at 1280; *see also id*. at 1281 (Pepper Hamilton possessed "confidential commercial information in the industry"). As explained by the Court, adherence to a fiduciary duty "ensures that clients will feel secure that everything they discuss with counsel will be kept in confidence" and that Pepper Hamilton "had a duty to administer properly their responsibilities to respect the confidences of Maritrans." *Id*. at 1283-1284. It further explained that the rationale behind this policy is to prevent an attorney from taking "undue advantage of the confidential communications of such client[.]" *Id*. at 1284.

In reaching its determination, the Court in *Maritrans* emphasized the confidential information that Pepper Hamilton garnered during the course of its representations. *See id*. at 1286 ("The greater the involvement [between the fiduciary and his former client], the greater the danger that confidences (where such exist) will be revealed. Here Pepper [Hamilton]

and [the particular attorney's] involvement was extensive as was their knowledge of sensitive information provided to them by Maritrans."); *id*. at 1286-1287 ("As fiduciaries, Pepper [Hamilton] and [its attorney] can be fully enjoined from representing Maritrans' competitors as that would create too great a danger that Maritrans' confidential relationship with Pepper and [the attorney] would be breached."). *Id.* at 1287.

Pennsylvania Rule of Professional Conduct 1.9 further addresses attorney duties to former clients and provides, in relevant part, as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.
>
> * * *
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter **shall not thereafter**:
>
> > (1) **use information relating to the representation to the disadvantage of the former client except** as these Rules would permit or require with respect to a client, or **when the information has become generally known**; or
> >
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa.R.P.C. 1.9(a) & (c) (emphases added).

The explanatory comment to Rule 1.9(c) offers the following pertinent insight:

[8] Paragraph (c) provides that **information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client**. However, the fact that a lawyer has once served a client does not preclude the lawyer from using **generally known information** about that client when later representing another client.

Pa.R.P.C. 1.9, cmt ¶ 8 (emphases added).

In addition, section 59 of the Restatement (Third) of the Law Governing Lawyers defines the term "Confidential Client Information" as "Confidential client information consists of information relating to representation of a client, **other than information that is generally known**." (emphasis added). Comment b to the above definition explains that "[t]he definition includes information that becomes known by others, so long as the information does not become generally known." Furthermore, comment d states the following:

> *d. Generally known information.* **Confidential client information does not include information that is generally known**. Such information may be employed by [a] lawyer who possesses it in permissibly representing other clients (see § 60, Comments g & h) and in other contexts where there is a specific justification for doing so (compare Comment e hereto). Information might be generally known at the time it is conveyed to the lawyer or might become generally known thereafter. At the same time, **the fact that information has become known to some others does not deprive it of protection if it has not become generally known in the relevant sector of the public.**
>
> Whether information is generally known depends on all circumstances relevant in obtaining the information. Information contained in books or records in public libraries, public-record depositaries such as government offices, or in publicly accessible electronic-data storage is generally known **if the particular**

> **information is obtainable through publicly available indexes and similar methods of access. Information is not generally known when a person interested in knowing the information could obtain it only by means of special knowledge or substantial difficulty or expense. Special knowledge includes information about the whereabouts or identity of a person or other source from which the information can be acquired, if those facts are not themselves generally known.**
>
> **A lawyer may not justify adverse use or disclosure of client information simply because the information has become known to third persons**, if it is not otherwise generally known. Moreover, if a current client specifically requests that information of any kind not be used or disclosed in ways otherwise permissible, the lawyer must either honor that request or withdraw from the representation (see § 32; see also §§ 16(2) & 21(2)).

Restatement (Third) of the Law Governing Lawyers § 59, cmt. d (emphases added).

We further observe that there is no Pennsylvania case law directly on point. However, as the Supreme Court of Ohio aptly stated in *Akron Bar Association v. Holder*, 810 N.E.2d 426, 435 (Ohio 2004), "[A]n attorney is not free to disclose embarrassing or harmful features of a client's life just because they are documented in public records or the attorney learned of them in some other way." Likewise, in *Lawyer Disciplinary Board v. McGraw*, 461 S.E.2d 850 (W.Va. 1995), the Supreme Court of West Virginia observed that "[t]he ethical duty of confidentiality is not nullified by the fact that the information is part of a public record or by the fact that someone else is privy to it." *Id*. at 861-862.

Here, the trial court concluded that because the FBI Affidavit was inadvertently appended to a document in an unrelated criminal matter, the information contained therein was public. Trial Court Opinion, 12/23/14, at 5. Specifically, the trial court stated that "the fact that the [FBI] Affidavit in question was publicly available for many years precludes a determination that the receipt of the improperly filed [FBI] Affidavit through a breach by [Appellees] of the attorney[-]client relationship and duty of fidelity is actionable." *Id*.[4]

_____

[4] We note that in its opinion of December 23, 2014, the trial court made the following observation:

> On April 11, 2008, the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania held a public hearing to determine whether documents filed in the Donald Dougherty criminal case which mentioned or discussed [Appellant] should be publicly available. [Appellant] herein requested that all such documents be removed or restricted from the District Court's online docket. Judge Eduardo C. Robreno denied the request saying that the document:
>
> > "was disclosed in the Affidavit and was litigated openly for this court....three or four hours on one day....so, the one interest that is being protected is no longer at issue because it's already out in the open."

Trial Court Opinion, 12/23/14, at 3. However, we must mention that the trial court's observation is not supported by the record. First, Appellant was not a party to the hearing held in federal court on April 11, 2008. Second, our review of the transcript of April 11, 2008, reveals that Judge Robreno was referencing Appellant's connection or possible connection to the Donald Dougherty, Jr. case, not a "document," as being disclosed in the affidavit
*(Footnote Continued Next Page)*

Our review of the record, in the light most favorable to Appellant as the non-moving party, reflects that the trial court erred in granting summary judgment in this case. Indeed, this case presents genuine issues of fact. The record reveals that the FBI Affidavit in question became part of another criminal matter through inadvertence. Even accepting that the FBI Affidavit was publicly available through PACER prior to December 10, 2012, we are left to ponder whether the FBI Affidavit was actually "generally known." All that is acknowledged at this point in the proceedings is that the FBI Affidavit was inadvertently appended to a document in a case that did not involve Appellant as a party. Therefore, it appears that such document was not "indexed" under Appellant's name and that a person interested in the FBI Affidavit "could obtain it only by means of special knowledge." ***See***

*(Footnote Continued)* ———————————

that was litigated in his court. Further, from a fair reading of the transcript of April 11, 2008, it appears that the affidavit that Judge Robreno mentioned was actually a different affidavit that pertained to Donald Dougherty, Jr. Indeed, the record before us on appeal lacks any support for the FBI Affidavit pertaining to Appellant being litigated openly, as indicated by the trial court. Rather, it appears that the arguments and material submitted to Judge Robreno dealt only with the naming of Appellant as the unidentified union official in the Donald Dougherty, Jr. case, and not the FBI Affidavit.

Moreover, in stipulations reached by the instant parties, as read before the federal court on June 5, 2014, the Assistant United States Attorneys assigned to the Donald Dougherty, Jr. case **did not know** that a copy of the FBI Affidavit had been included with Document 27 **until** December of 2012. The stipulation specifies that at the time of the April 11, 2008, hearing before Judge Robreno, the Assistant United States Attorneys did not know that a copy of the FBI Affidavit had been inadvertently included with Document 27 in Donald Dougherty, Jr.'s matter criminal matter. N.T., 5/5/14, at 6-7.

Restatement (Third) of the Law Governing Lawyers § 59, cmt. d. Furthermore, it is unknown exactly how and when the FBI Affidavit came into the possession of the Inquirer and eventually became the subject of an article in the Inquirer during Pepper Hamilton's representation of the Inquirer. Whether Pepper Hamilton committed a breach of its duties to Appellant depends on the answers to these questions. Thus, these questions are sufficient to establish genuine issues of material fact regarding Pepper Hamilton's conduct. Contrary to the trial court's conclusion, in the event that the FBI Affidavit was not generally known information, it appears that Pepper Hamilton breached its duty to Appellant as a former client and such breach was actionable. Accordingly, we reverse the order granting summary judgment.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/3/2016