J-A30043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GERALD K. MORRISON, AS EXECUTOR OF THE ESTATE OF WILLIAM POWELL | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 894 MDA 2019 |
| RHOADS & SINON, LLP, STANLEY SMITH AND SHERILL MOYER | : : : | |

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2011-CV-3840

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:            **FILED FEBRUARY 26, 2020**

Appellant, Gerald K. Morrison, as executor of the estate of William Powell, appeals from the order granting summary judgment as to all counts in favor of Appellees, Rhoads & Sinon, LLP ("Rhoads & Sinon"), Stanley Smith, and Sherill Moyer, and dismissing Appellant's amended complaint with prejudice.  We affirm in part and reverse in part.

The family at the center of this estate action consisted of: Frank A. Sinon, Esquire ("Mr. Sinon"), a founding partner of Appellee law firm Rhoads & Sinon; his wife, Dorothy James Sinon ("Mrs. Sinon"); their daughter,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Leslie Sinon Powell ("Wife"); and her husband, William Powell ("Husband").

Mr. Sinon, Mrs. Sinon, Wife, and Husband are all now deceased.

> The complaint filed by [Appellant and Wife's Estate] describes the following factual summary. Wife was the lifetime income beneficiary of a trust settled by [Mrs. Sinon] and known as the "Leslie Sinon Powell Trust" ("LSP Trust"). Under the LSP Trust, Wife also had the power to appoint the assets of the LSP Trust by specific reference in her Will.[1] In 2009, Wife executed a Will, prepared by Appellees, bequeathing the residue of her estate, including a general reference to powers of appointment, to Husband. However, this Will did not specifically reference the power of appointment contained in the LSP Trust.
>
> > [1] Neither the LSP Trust nor Wife's Will are part of the certified or reproduced record on this appeal. As Appellees never objected [to] the absence of these documents, we are left to accept the allegations in the complaint concerning these documents as true, pursuant to our standard of review . . .
>
> On February 19, 2010, Wife's mother passed away. Appellees Smith and Moyer, as Executors and Attorneys for the estate of Wife's mother, contacted Husband and Wife to discuss the estate. At the same time, Smith and Moyer were retained by Husband and Wife for their own estate planning purposes. On March 9, 2010, the parties met to discuss the distribution of Wife's mother's estate. As alleged in the complaint, Smith and Moyer never alerted Wife to the fact that her Will did not adequately exercise the power of appointment contained in the LSP Trust.
>
> On March 12, 2010, Husband contacted Appellees via e-mail, requesting that Smith and Moyer prepare a codicil to Wife's Will that specifically exercised the power of appointment in Husband's favor. Moyer responded, indicating that a codicil would be drafted for Husband and Wife's approval.
>
> On March 17, 2010, Husband notified Appellees that Wife had been diagnosed with cirrhosis of the liver, and requested that the codicil be deemed an urgent matter. Two days later, on Friday March 19, Moyer responded, indicating that the codicil would be ready for Wife's review by "early next week." Husband responded that same evening:

> The sooner the better. Leslie is in serious condition and will most likely be hospitalized tomorrow. I am seriously concerned about the foot dragging on the part of Rhoads & Sinon in this and other matters.
>
> On March 22, Moyer responded, indicating that the codicil was ready for Wife's review, and that Husband should provide a date for Wife to meet with Appellees to "privately to review the changes" to her Will.
>
> Unfortunately, Wife had already fallen into a coma from which she never recovered. [She died on April 4, 2010.] As a result, the significant assets in the LSP Trust were not appointed to Husband, and instead were distributed pursuant to the terms of the LSP Trust.
>
> Husband and Wife's Estate subsequently filed a Writ of Summons in this matter. Before the Complaint was filed, Husband also passed away [in May 2011], and the successor executors of the Estates were substituted as parties. The Estates then filed a six count complaint asserting the following claims: I – Breach of Fiduciary Duty to Husband and Wife; II – Legal Malpractice On Behalf of Both Husband and Wife; III – Intentional and Reckless Misconduct of Smith and Moyer; IV – Negligent Supervision of Smith and Moyer by Rhoads & Sinon; V – Breach of Contract with Wife, Asserted by Husband as Intended Third Party Beneficiary; and VI – Breach of Contract with Husband.

***Begley v. Rhoads & Sinon LLP***, No. 155 MDA 2014, unpublished memorandum at 2-4 (Pa. Super. filed March 9, 2015).[1] The complaint included the following averments:

> 6. At all times relevant herein [Appellee] Rhoads & Sinon, acting through its agents, servants and employees, including [Appellees] Smith and Moyer, represented decedents, [Wife] and [Husband] in connection with the drafting of their respective Wills and estate planning. . . .
>
> 9. [Appellees] were also counsel for [Mr.] Sinon and [Mrs. Sinon] and had prepared their respective Wills and Trust

---

[1] Thomas D. Begley, Jr., was the administrator of Wife's Estate. ***Begley***, No. 155 MDA 2014, at 1.

documents. In fact, [Appellees] Smith and Moyer were the Executors under the Last Will and Testament of [Mrs. Sinon] and were the Trustees of The Dorothy James Sinon Revocable Agreement of Trust ("Agreement of Trust") dated August 8, 2003 as amended and last amended on April 22, 2008. . . .

12. On or about March 20, 2009, [Wife] executed her Last Will and Testament drafted and prepared by [Appellees] and in which [Appellee] Moyer was named successor Co-Executor of her Estate in the event her husband was unable to serve as Executor. Paragraph 3 of [Wife]'s Will provided:

I give, devise and bequeath all of the rest, residue and remainder of my property, real, personal and mixed, not disposed of in the preceding portions of this Will, including all property over which I hold a power of appointment[](which powers of appointment I hereby exercise in favor of my estate), to My Spouse, if My Spouse survives me.

13. At the time her Will was executed, [Wife] was unaware of the provisions of her mother's Will and Trust. . . .

17. As expressed to [Appellees] Smith and Moyer, [Wife]'s desire, as specifically reflected in her Will and in an earlier email communication to [Appellee] Smith, was to leave her assets with the exception of a $25,000 specific bequest to her cousin) outright to [Husband]. . . .

24. On March 12, 2010, [Husband], after having read [Mrs. Sinon]'s Will and Agreement of Trust, recognized the need for [Wife] to either revise her Will or have a Codicil to her Will prepared by which she would exercise the power of appointment by specific reference in order to appoint the trust principal to him upon her death. After discussing the issues with [Wife] and in accordance with her direction, [Husband] sent an email to [Appellees] explaining that [Wife] wanted to, among other things, have [Appellees] prepare a Codicil by which she would specifically exercise the power of appointment in favor of [Husband] outright (the "Codicil"). Attached hereto, incorporated herein by reference and marked Exhibit "B" is a true and correct copy of [Husband]'s email to [Appellee] Moyer.

Complaint, 4/26/2013, at 2-4, 6 ¶¶ 6, 9, 12-13, 17, 24.  Pursuant to Count I, breach of fiduciary duty, the complaint made the following additional averments:

> 48.   Rather than perform duties owing to both [Wife] and [Husband], [Appellees] chose to ignore those duties and to instead improperly speculate as to what [*Mrs. Sinon*]*'s* wishes might have been had she still been alive.
>
> 49.   As [Appellee] Smith has admitted, he looked for ways to have his client [Wife] exercise the power without making an outright appointment to [Husband], who was also his client, all to [Husband]'s ultimate detriment and loss. . . .
>
> 52. . . . [Appellees] owed them the duty to: . . .
>
> > (c) protect [Husband]'s interest when [Wife] became ill and her potential ability to exercise the power of appointment was in jeopardy;

*Id.* at 10-11 ¶¶ 48-49, 52(c).

"Appellees filed preliminary objections to the Complaint, including an objection asserting that neither Estate had standing[2] to assert these claims. The trial court sustained this objection [in 2013], and [a] timely appeal ultimately followed."  *Begley*, No. 155 MDA 2014, at 4.

---

[2] The Supreme Court has explained "standing" as follows:

> Standing requires that an aggrieved party have an interest which is substantial, direct, and immediate.  That is, the interest must have substance — there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law.  That an interest be direct requires that an aggrieved party must show causation of the harm to his interest by the matter of which he complains.

*In re Francis Edward McGillick Foundation*, 642 A.2d 467, 469 (Pa. 1994) (citations and internal quotation marks omitted).

- 5 -

On appeal, this Court stated:

At its heart, the complaint in this matter involves a claim that Appellees failed in their duty to draft a Will for Wife that effectuated her testamentary intent. . . . The Supreme Court held that the estate of the testator has no standing, as the estate suffers no harm. *See Guy v. Liederbach*, 459 A.2d 744, 749 (Pa. 1983). Thus, the trial court in the present case was correct in granting the preliminary objections to any claims made by Wife's Estate.

In contrast, the Court in *Guy* held that certain intended beneficiaries of a Will have standing to raise such a claim against the drafter of a will. *See id.*, at 751. A beneficiary has standing to raise the claim where he is a named legatee, and where the circumstances of the relationship between the testator and the attorney, as well the will itself, indicate the testator's intent to benefit the legatee. *See id.*, at 751-752.

Under the applicable standard of review, the first requirement from *Guy* is met by paragraph 12 of the Complaint, which alleges that Wife bequeathed the residue of her estate to Husband, including all property subject to Wife's powers of appointment. Husband is therefore a named legatee.

The second requirement under *Guy* is less straightforward in its application. However, under the unique circumstances of this case, it is reasonable to infer from the allegations in the Complaint that Wife intended for Husband to receive the assets from the LSP Trust. As noted above, paragraph 12 indicates that Wife's Will bequeathed all property subject to Wife's powers of appointment to Husband. Furthermore, [in paragraphs 13 and 24 of] the Complaint allege[] that Wife was unaware that her Will was insufficiently specific to legally exercise her power of appointment under the LSP Trust until Husband noticed the issue on March 12, 2010. Finally, paragraph 17 of the Complaint alleges that Wife expressed to Smith and Moyer her desire to leave all of her assets, save a $25,000 specific bequest to a cousin, to Husband. These allegations, taken as true, are sufficient to establish that Wife intended to appoint the assets of the LSP Trust in favor of Husband. . . .

Pursuant to the complaint, the only reason Wife's will did not effectuate this testamentary intent is that Wife was unaware of

the requirement of specificity in the LSP Trust. Once she was made aware of this requirement, she requested that Smith and Moyer rectify this oversight.

*Id.* at 5-8. This Court ultimately held that "the trial court erred in concluding that Husband's Estate lack[ed] standing as an intended third party beneficiary of the lawyer/client relationship between Wife and Appellees. . . . [T]he trial court did not err in concluding that Wife's Estate lacks standing to bring such claims." *Id.* at 8.[3] This Court thereby affirmed in part, reversed in part, and remanded for further proceedings consistent with its decision. *Id.* at 1, 8.

Appellees filed an application for re-argument with this Court, which was denied on May 19, 2015. Appellees then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on October 29, 2015. *Begley v. Rhoads & Sinon LLP*, 126 A.3d 1281 (Pa. 2015).

On remand [to the trial court], all the claims brought by Husband's estate remained before the trial court. Therefore, the trial court addressed [Appellees'] remaining preliminary objections and directed that an Amended Complaint be filed to plead damages with the requisite specificity.[1] An Amended Complaint was filed which mirrored the original Complaint except for the dismissed Count [VI] and more specific damages.

[1] The parties agreed to dismiss Count VI.

Trial Court Opinion, filed May 3, 2019, at 2-3. Paragraphs 6, 9, 12, 13, 17, 24, 48, and 52(c) of the original complaint remained the same in the amended complaint, except for being renumbered as paragraphs 5, 8, 11, 12, 16, 23, 49, and 53(c), respectively. The penultimate paragraph of Count I added the

_____

[3] Begley was therefore dropped as a party from this action, and Morrison became lead plaintiff.

- 7 -

following: "As a direct and proximate result of [Appellees'] breach of fiduciary duty to [Husband], [Husband] and his Estate were deprived of the principal balance of $3,000,000 in the LSP Trust . . ." Amended Complaint, 11/7/2016, at 12 ¶ 55.

> [Appellees] filed a Motion for Summary Judgment asserting that: (1) based upon "new law" established in [**Estate of Robert H.**] **Agnew** [**v. Ross**, 152 A.3d 247 (Pa. 2017)], Husband does not have standing as a third-party beneficiary based upon the unexecuted codicil; (2) no other claim against a testator's attorney is allowed; (3) Husband's causes of action require proof that the testator intended to exercise the special power of appointment in his favor; and (4) Pennsylvania does not recognize a claim for Intentional and Reckless Misconduct.

Trial Court Opinion, filed May 3, 2019, at 3. Appellees alleged no new facts in their motion for summary judgment for Count V, distinct from what was presented in their preliminary objections; they only offered the "new law" of **Estate of Robert H. Agnew v. Ross**, 152 A.3d 247 (Pa. 2017). Appellees' Motion for Summary Judgment, 5/17/2018, at 8-10 ¶¶ 39-57.

In his response to Appellees' motion for summary judgment, Appellant asserted that Count III, labelled as a claim for "Intentional and Reckless Misconduct of Smith and Moyer" in both the complaint and amended complaint, "was intended to be a claim for interference with an inheritance[.]" Appellant's Response to Appellees' Motion for Summary Judgment, 6/15/2018, at 21 ¶ 58. Appellant's response also averred the following facts:

> [Appellees] did not consider informing [Wife] or [Husband] that there was any conflict of interest in their representation of each of the members of the Sinon/Powell family. (Exhibit "3", [Deposition

Transcript of Moyer, 10/12/2017, at] 70-72, 154-156[4]; Exhibit "4", [Deposition Transcript of Smith, 10/5/2017, at] 88-101[5]) . . .

[A]fter the "foot dragging" comment on March 19, 2010, Attorney Moyer wrote a memo to the file in which he summarized how he informed [Husband] that, if [Wife] never signed the codicil, he could argue that [Wife] intended to exercise the power of appointment. (Exhibit "3" [at] 224- 225,[6] Exhibit "18")

---

[4] During Moyer's deposition, the following exchange occurred:

[Q]    Did you believe as Rhoads [&] Sinon being the attorney for the Estate of [Mrs.] Sinon, that you had a conflict with representing [Husband] and [Wife] in connection with any of their rights to the Estate? . . .

A      I don't know that I perceived that as a conflict at that time.

Appellant's Response to Appellees' Motion for Summary Judgment, 6/15/2018, Exhibit "3" at 70-71.

[5] During his deposition, Smith was asked about potential conflicts of interest:

Q.    Did  you, sir, believe you had a conflict in any form if you were to tell [Wife] any portion or aspects of her mother's estate planning? . . .

THE WITNESS:  I don't believe I had a conflict, necessarily. I had a duty of confidentiality, which was maintained.

*Id.*, Exhibit "4" at 89.

[6] Specifically, the following exchange occurred during Moyer's deposition:

Q.    You then said to [Husband] after he is so upset, Told him [Wife] will exercise and her General Power of Appointment, some legal issues on timing; but he would have an argument that [Wife] intended to exercise and would have done so if she dies.

A.    And that is what I said to him in there in response to what he said to me.

*Id.*, Exhibit "3" at 224-25.

*Id.* at 7, 9 ¶¶ 17, 19.

On December 31, 2018, the trial court entered an order granting Appellees' motion for summary judgment as to Counts I, II, and V. Order, 12/31/2018, at 1-2. In explaining its reasoning for granting summary judgment for Count V, the trial court stated: "as a matter of law, that [Appellant] lacks standing to assert a breach of fiduciary duty owed to [W]ife and breach of contractual obligation to his wife in the preparation and execution of a codicil." *Id.* at 1 (citing *Estate of Robert H. Agnew v. Ross*, 152 A.3d 247 (Pa. 2017); *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983)).

> Summary judgment was denied as to Count III (Intentional and Reckless Misconduct) as was the negligent supervision claims only as associated with Count III. Summary judgment was granted as to the negligent supervision claims with respect to Counts I, II and V.[7]
>
> On January 11, 2019, Appellant filed a Motion for Reconsideration or alternatively, to certify the matter for immediate appeal. On January 29, 2019, Defendants/Appellees also filed a Motion for Reconsideration, or in the alternative, to certify the matter for appeal. On January 31, 2019, th[e trial c]ourt granted both parties' motions for reconsideration and issued a briefing schedule. Oral argument was entertained on March 18, 2019.
>
> On May 3, 2019, after careful reconsideration, th[e trial c]ourt dismissed the Amended Complaint in its entirety for the reasons set forth in th[e trial c]ourt's [accompanying] Memorandum[]Opinion . . . Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania on May 31, 2019. On June 3, 2019, th[e trial c]ourt ordered Appellant to file a 1925(b)

---

[7] The trial court originally granted Appellees' motion for summary judgment as to Count I, because it determined that Appellant lacked standing. Upon reconsideration, the trial court reversed its ruling but nonetheless still granted summary judgment, without further explanation.

Statement of Issues Complained of On Appeal ("Statement"). Appellant filed his Statement on June 10, 2019[.]

Trial Court Opinion, filed July 9, 2019, at 1-2.

Now -- almost a decade after Wife's death -- we consider the following issues presented by Appellant for our review:

> 1. Whether the trial court erred in granting summary judgment as to Count V by determining that it had the authority to reconsider the same evidence that the Superior Court reviewed and reach a different legal conclusion thus holding that the Superior Court erred in relying upon the executed Will as the operative document to confer standing.
>
> 2. Whether the law of the case doctrine should have prevented the trial court from contradicting the earlier trial judge's ruling that the executed Will conferred standing upon [Appellant]'s decedent with respect to Count V, where there was no intervening change in the controlling law, no change in the facts or evidence, or where the prior holding was not clearly erroneous.
>
> 3. Whether the trial court erred in dismissing Count I of [Appellant]'s Amended Complaint where in its Memorandum Opinion the court opines that as to Count I summary judgment should not have been granted as a matter of law, but granted it because of the lack of admissible evidence to establish Wife's specific intent.
>
> 4. Whether the trial court erred in reversing its prior denial of summary judgment as to Count [III], Intentional Interference, and associated Negligent Supervision claim set forth in Count IV, by erroneously determining that the evidence presented to establish such claim was inadmissible hearsay.

Appellant's Brief at 3-4 (suggested answers omitted).

## Count V - Breach of Contract with Wife, Asserted by Husband as Intended Third Party Beneficiary

Appellant's first two appellate challenges concern the law of the case doctrine:

The law of the case doctrine is comprised of three rules:

- 11 -

> (1) **upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter**; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.
>
> *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995); *accord Zane v. Friends Hosp.*, 575 Pa. 236, 836 A.2d 25, 29 (2003). Within this doctrine lies the directive that "judges sitting on the same court in the same case should not overrule each other's decisions," otherwise known as the "coordinate jurisdiction rule." *Commonwealth v. Daniels*, 628 Pa. 193, 104 A.3d 267, 278 (2014). . . . Only in exceptional circumstances, such as **an intervening change in the controlling law**, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed, may the doctrine be disregarded. To determine whether the law of the case doctrine applies, a court must examine the rulings at issue in the context of the procedural posture of the case.

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282-83 (Pa. Super. 2016) (emphasis added) (some internal citations and quotation marks omitted).

Appellant first challenges the trial court's decision –

> granting Summary Judgment as to Count V by determining that it had the authority to reconsider the same evidence that the Superior Court reviewed and reaching a different legal conclusion than the Superior Court by relying upon the codicil rather than the executed Will as the operative document to confer standing.

Appellant's Brief at 21. Appellant continues that "[t]he trial court was bound by the Superior Court's finding that the Will confers standing" and that this Court "did not err" in reaching that conclusion. *Id.* at 22, 24.

- 12 -

Appellees answer that "the trial court properly granted summary judgment to [them] for [Appellant]'s brief of contract claim because [Appellant] lacked standing to prosecute a breach of contract action against [Appellees,]" relying upon **Agnew**, 152 A.3d 247, which was decided subsequent to this Court's prior decision in **Begley**, No. 155 MDA 2014 (filed March 9, 2015). Appellees' Brief at 15-17 (unnecessary capitalization omitted).[8]

In the current case, when deciding Appellees' motion for summary judgment, the trial court stated: "In this instance, we granted summary judgment in favor of [Appellees] as to the Breach of Contract claim on the grounds that **the appellate court erroneously relied upon the executed Will** as the operative document to confer standing rather than the unexecuted codicil." Trial Court Opinion, filed May 3, 2019, at 7 (emphasis added).

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **In re**

---

[8] Appellees do not contend that any new evidence related to Husband's standing to bring Count V has come to light between this Court's memorandum reversing the trial court's decision to sustain their preliminary objection to Count V and the Appellees' motion for summary judgment. **See** Appellees' Brief at 15-20; Appellees' Motion for Summary Judgment, 5/17/2018, at 8-10 ¶¶ 39-57. Thus, the exception to the law of the case doctrine for "a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed" does not apply. **Mariner Chestnut**, 152 A.3d at 282.

*Rosemary C. Ford Inter Vivos QTIP Trust*, 176 A.3d 992, 999 (Pa. Super. 2017).

As noted above, "upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter[.]" *Mariner Chestnut*, 152 A.3d at 282.

As issues of standing are questions of law and as a trial court may not alter the resolution of a legal question previously decided by an appellate court, a trial court may not alter the resolution of an issue of standing previously decided by an appellate court. *See Ford*, 176 A.3d at 999; *Mariner Chestnut*, 152 A.3d at 282. Accordingly, in the current action, the trial court was not permitted to alter this Court's prior resolution of Husband's Estate's standing to bring Count V.

As for Appellee's argument that there was "an intervening change in the controlling law," *Mariner Chestnut*, 152 A.3d at 282, with the Supreme Court of Pennsylvania's holding in *Agnew*, we note that *Agnew* did not change the law but, instead, reaffirmed the holding of *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983),[9] upon which this Court had relied in *Begley*, No. 155 MDA 2014,

_____

[9] The only arguable "intervening change in the controlling law," *Mariner Chestnut*, 152 A.3d at 282, is that *Agnew* clarified the term "non-named beneficiaries" as used in *Guy*, 459 A.2d at 752 n.8, as "refer[ring] to persons who are given a bequest but are generally identified in a manner other than by name, such as 'my children' or 'my heirs' or persons or entities to be identified after the testator's death[.]" *Agnew*, 152 A.3d at 260. Nonetheless, this explanation did not overrule or otherwise alter the law of

at 5-6. **See Agnew**, 152 A.3d at 252-53, 259 (citing **Guy**, 459 A.2d at 747, 751, 757 (citing Restatement (Second) of Contracts § 302)).[10] A new case does not necessarily mean new law, if it stands for a principle known and considered by the appellate court previously. For example, in **Commonwealth v. Santiago**, 822 A.2d 716, 730-31 (Pa. Super. 2003), after this Court remanded the case for a new trial, the trial court relied upon a new United States Supreme Court case, **Kyles v. Whitley**, 514 U.S. 419 (1995), to make a ruling contrary to what this Court had decided about the appellant's claim pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963). **Kyles** "held that in order to determine whether evidence is material to establish a **Brady** violation, the evidence must be considered collectively." **Santiago**, 822 A.2d at 731. However, this Court noted that, when it considered the appellant's **Brady** allegations, it was "well aware of [the] obligation to look at the evidence in whole" and "was perfectly cognizant of its obligation to consider whether the cumulative effect of the nondisclosures would have required a reversal." **Id.** Thus, although **Kyles** was a new case, it was not "new law," because it "did not announce an intervening change of law that would create an exception to the law of the case doctrine and allow the trial court to

---

**Guy**, and the phrase "non-named beneficiaries" is of no moment in the current appeal.

[10] In their brief to this Court, Appellees appear to concede that "**Agnew** confirmed . . . its holding **Guy**[.]" Appellees' Brief at 16.

disregard this Court's conclusions." ***Id.*** Analogously, although ***Agnew*** was a new case, it was not "new law" announcing an intervening change of law that would create an exception to the law of the case doctrine and allow the trial court to disregard this Court's prior holding in ***Begley***.

For Appellant's second appellate issue, the trial court would generally be correct that "[t]he coordinate jurisdiction rule does not apply in this matter because the procedural posture of the earlier court's decision was at the preliminary objection stage, whereas [Appellees'] present challenge is on a motion for summary judgment." Trial Court Opinion, filed May 3, 2019, at 8; ***see also Riccio v. American Republic Insurance Co.***, 705 A.2d 422, 425 (Pa. 1997) ("Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion."). However, issues of standing are a special case. Lack of capacity to sue and standing are waived if not objected to at the earliest possible time. ***See Hall v. Episcopal Long Term Care***, 54 A.3d 381, 399 (Pa. Super. 2012) (standing and lack of capacity to sue are related concepts and must be raised at earliest possible opportunity); ***see also Kuwait & Gulf Link Transport Co. v. Doe***, 92 A.3d 41, 45 (Pa. Super. 2014) (an issue of standing is waived if not raised at first opportunity). In ***Huddleston v. Infertility Center of America, Inc.***, 700 A.2d 453, 457 (Pa. Super. 1997), we held that a defendant waived the

issue of standing when she did not raise it in preliminary objections. ***See*** Pa.R.C.P. 1028(a)(5) ("Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: . . . lack of capacity to sue"). Ergo, issues of standing could not have been raised and decided anew at the summary judgment stage. Hence, the trial court was precluded from ruling on the issue of standing pursuant to Appellees' motion for summary judgment, and Appellant's second appellate issue is likewise meritorious.[11]

For the reasons set forth above, we reverse the trial court's grant of summary judgment as to Count V of the amended complaint.[12] As Count IV,

_____

[11] Assuming *arguendo* that Appellees' motion for summary judgment was their earlier possible opportunity to raise an argument pursuant to ***Agnew***, said case is inapplicable for all of the reasons discussed above.

[12] We note that the sole issue before us pertaining to Count V was whether Husband and, in turn, his estate had standing to pursue a cause of action for breach of contract with Wife. We make no finding as to the admissibility or sufficiency of the evidence to support such a claim. For future reference, we merely remind the parties of the three elements that are necessary --

> to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. Additionally, it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties.

***Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016) (citations and internal quotation marks omitted). Additionally,

> Before a contract can be found, all of the essential elements of the contract must exist. Therefore, in determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the

negligent supervision of Smith and Moyer by Rhoads & Sinon, was dismissed only as a byproduct of the dismissal of Appellant's other counts, we reinstate Count IV to the extent that it relates the cause of action for breach of contract with Wife, asserted by Appellant as the estate of the intended third party beneficiary.[13]

## Count I - Breach of Fiduciary Duty

Next, Appellant challenges the trial court's grant of summary judgment on and dismissal of Count I, breach of fiduciary duty. Appellant's Brief at 35-38.

Entry of summary judgment is governed by Rule 1035.2 of the Rules of Civil Procedure:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
>> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

---

> agreement, whether the terms are sufficiently definite, and whether consideration existed. If all three of these elements exist, the agreement shall be considered valid and binding.

***Cardinale v. R.E. Gas Development LLC***, 74 A.3d 136, 140 (Pa. Super. 2013) (quoting ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*)).

[13] Although Appellant does not explicitly include a request to reinstate Count IV if Count V is restored in its statement of questions, as it did for Count III, **compare** Appellant's Brief at 3 **with id.** at 4, it makes a general plea to have Count IV reinstated if any of the other three counts are restored. ***Id.*** at 5 n.2.

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Our standard of review of an appeal from an order granting summary judgment is well settled: Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled to judgment as a matter of law. Whether there is a genuine issue of material fact is a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary. When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Newell v. Montana West, Inc.*, 154 A.3d 819, 821–22 (Pa. Super. 2017) (citations and internal quotation marks omitted).

*Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 100 (Pa. Super. 2017).

For a claim for breach of fiduciary duty, the court must focus on the nature of the relationship between the parties in order to determine whether a confidential relationship existed and thus whether fiduciary duties existed. *See Mirizio v. Joseph*, 4 A.3d 1073, 1082-84 (Pa. Super. 2010). "[T]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line." *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. 2001) (quoting *In re Estate of Scott*, 316 A.2d 883, 885 (Pa. 1974)).

> The elements the plaintiff must prove in claim of breach of fiduciary duty are: (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit ... was a real factor in bring[ing] about plaintiff's injuries[.]

**McDermott v. Party City Corp.**, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998); **see also Advanced Fluid Systems, Inc. v. Huber**, 295 F. Supp. 3d 467, 487 (M.D. Pa. 2018) ("[t]o sustain [a] claim for breach of fiduciary duty," plaintiff "must demonstrate" that defendant "failed to act in good faith" and for plaintiff's "sole benefit" and that plaintiff "suffered an injury" as a result).[14]

> With respect to a breach of fiduciary duty claim, a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest. . . .

---

[14] "[A]lthough we are not bound by decisions from . . . courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and . . . not incompatible with Pennsylvania law." **Ferraro v. Temple University**, 185 A.3d 396, 404 (Pa. Super. 2018) (citing **Newell v. Montana West, Inc.**, 154 A.3d 819, 823 & n.6 (Pa. Super. 2017)), *reargument denied* (June 27, 2018); **see also** [**Commonwealth v.**] **Manivannan**, 186 A.3d [472,] 483 [(Pa. Super. 2018),] ("When confronted with a question heretofore unaddressed by the courts of this Commonwealth, we may turn to the courts of other jurisdictions.").

**Farese v. Robinson**, 2019 PA Super 336, *23 (filed November 8, 2019).

**McDermott** cited then-current Pennsylvania Suggested Standard Jury Instruction Section 4.16. However, that section has been removed from the most recent edition of the Pennsylvania Suggested Standard Civil Jury Instructions. **Advanced Fluid**, although written two decades later, referenced **McDermott**.

Activity is actionable if it constitutes breach of a duty imposed by statute or by common law. Our common law imposes on attorneys the status of fiduciaries *vis a vis* their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly. Failure to so perform gives rise to a cause of action. It is "actionable."

At common law, **an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable.**

***Dougherty v. Pepper Hamilton LLP***, 133 A.3d 792, 797 (Pa. Super. 2016) (emphasis added) (internal citations, ellipsis, and quotation marks omitted) (some formatting); ***see also Kirschner v. K & L Gates LLP***, 46 A.3d 737, 757 (Pa. Super. 2012) (attorney's duty of honesty, fidelity, and confidentiality prohibits attorney from engaging in conflicts of interest, and breach of such duty is actionable).

Appellant's amended complaint makes clear that Count I is based upon an allegation that Appellees breached their fiduciary duty to **Husband** as their client, not their duty to Wife. Amended Complaint, 11/7/2016, at 12 ¶ 55; ***see also*** Appellant's Brief at 36 ("there is no doubt that [Appellees] breached their duties to [Husband]"). The amended complaint further alleges that Appellees breached their fiduciary duty by engaging in a conflict of interest arising from Appellees simultaneously representing Mr. Sinon, Mrs. Sinon, Wife, and Husband, as well as serving as trustees of the LSP Trust. Amended Complaint, 11/7/2016, at 2, 10 ¶¶ 5, 8, 46; ***see also*** Appellant's Brief at 35-37 (arguing that Appellees "assume[d] a position adverse or antagonistic to" Husband and "engaged in a conflict of interest" by "engaging in family

representation where they put the interests of one client ([Mrs. Sinon])" over Husband's interests).   The amended complaint continues that, due to this conflict of interest, Appellees "chose to ignore those duties" owed to Husband (and Wife) "and to instead improperly speculate what [*Mrs. Sinon*]*'s* wishes might have been had she still been alive[,]" going so far as actively to try to avoid having Wife make an outright appointment of the assets of the LSP Trust to Husband.   Amended Complaint, 11/7/2016, at 10-11 ¶¶ 48-49.   In other words, the amended complaint contends that Appellees placed their duty of loyalty to Mrs. Sinon – widow of one of the firm's founding partners – above that owed to Husband, who was also their client.   **See id.**   Furthermore, the amended complaint contends that Appellees never informed Husband of the potential for conflicts of interest.   **Id.** at 10 ¶ 46.

Accordingly, the amended complaint alleged facts that, if established, would demonstrate that Appellees violated their duty of undivided loyalty to Husband by engaging in conflicts of interests, thereby breaching their fiduciary duty to him, and such a breach is actionable.   **Dougherty**, 133 A.3d at 797; **Kirschner**, 46 A.3d at 757.

In their motion for summary judgment, Appellees presented no facts contradicting any of the allegations in the amended complaint.   **See generally**

Appellees' Motion for Summary Judgment, 5/17/2018.[15]  On the other hand, in his response to Appellees' motion for summary judgment, he was able to supplement his assertion that Husband was not informed of any potential conflicts of interest, as well as an example of incorrect legal advice given to him by Appellees.  Appellant's Response to Appellees' Motion for Summary Judgment, 6/15/2018, at 7, 9 ¶¶ 17, 19; *id.*, Exhibit "3" at 70-71, 224-25; *id.*, Exhibit "4" at 88-101.  Thus, there is a genuine issue of material fact as to whether Appellees violated their fiduciary duty to Appellant by engaging in a conflict of interest, and Appellees were not entitled to summary judgment on Count I as a matter of law.  Pa.R.C.P. 1035.2; *see also Reason*, 169 A.3d at 100.

To the extent that any language in Count I can be read to suggest that Appellees breached a fiduciary duty to Wife, this Court has previously ruled that Wife's Estate has no standing.  *Begley*, No. 155 EDA 2014, at 8.  Thus, only the claim for a breach of fiduciary duty to Husband is reinstated.[16]  Again, as Count IV, negligent supervision of Smith and Moyer by Rhoads & Sinon,

---

[15] As Appellant notes in his brief, Appellees "did not take the position with respect to the Summary Judgment Motion that [Husband] was not their client, nor did they contend that the evidence was insufficient to establish the attorney-client relationship between them and [Husband]."  Appellant's Brief at 37.

[16] We thereby agree with Appellees that Husband and Husband's Estate would not have standing to bring a claim for breach of fiduciary duty owed to Wife.  *See* Appellees' Brief at 31.

was dismissed only as a byproduct of the dismissal of Appellant's other counts, we reinstate Count IV to the extent that it relates the cause of action for breach of fiduciary duty owed to Husband.[17]

**Count III**

Appellant's remaining challenge is to the trial court's grant of summary judgment on and dismissal of Count III. Appellant's Brief at 38. Appellant specifically contends that the trial court "erroneously determin[ed] that the evidence presented for such claim was inadmissible hearsay." *Id.*

Our standard of review for a grant of summary judgment remains the same. *See Reason*, 169 A.3d at 100.

In both Appellant's original complaint and amended complaint, Count III was entitled "intentional and reckless misconduct[.]" Complaint, 4/26/2015, at 14; Amended Complaint, 11/7/2016, at 15. However, there is no such cause of action recognized in Pennsylvania as "intentional and reckless misconduct."

In his response to Appellees' motion for summary judgment, Appellant asserts that Count III "was intended to be a claim for interference with an

---

[17] Although Appellant does not explicitly include a request to reinstate Count IV if Count I is restored in its statement of questions, we find the plea sufficiently presented and preserved before this Court for the same reasons as for Count V, above. Appellant's Brief at 3, 5 n.2.

inheritance[.]" Appellant's Response to Appellees' Motion for Summary Judgment, 6/15/2018, at 21 ¶ 58.

Assuming we accept Appellant's contention that Count III is actually a claim for tortious interference with testamentary expectancy, the elements of such a cause of action are:

> (1) the testator indicated an **intent to change** his or her will to provide a described benefit for the plaintiff; (2) the defendant used fraud, misrepresentation or undue influence to prevent the execution of the intended will; (3) the defendant successfully prevented that execution; and (4) but for the defendant's conduct, the testator would have changed the will.

***McNeil v. Jordan***, 934 A.2d 739, 741 (Pa. Super. 2007) (emphasis added) (citation omitted). Thus, even if we agree that Count III is a cause of action recognized in Pennsylvania, Appellant still has to be able to establish **Wife's intent to change** her will to benefit Appellant. ***See id.***[18] After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned analysis by the Honorable John J. McNally III, we conclude Appellant's remaining issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question:

> [Appellees] argue that there is no admissible evidence of record supporting that it was [Wife]'s intent to change her will to exercise the special appointment power in favor of Husband. [Appellees] assert that the only evidence of [Wife]'s intent is Husband's email to the attorneys, which they describe as inadmissible hearsay.

---

[18] Establishing Wife's intent "to change" her will is distinct from establishing whether Wife always intended her will to appoint the assets of the LSP Trust to Husband.

- 25 -

[Appellant] asserts that . . . there are genuine issues of material fact as to [Appellees'] actions in interfering with [Husband]'s inheritance. As evidence of Wife's intent to change her Will in order to exercise her special appointment power in favor of Husband, [Appellant] points to (1) [Husband's] email instruction to [Appellees] of March 12; (2) evidence that their marital estate planning where each gave to the other all of their assets; (3) an email from [Wife] to the [Appellees] in 2003 specifically advising them that she intended her husband to have all of her assets; (4) the communications made on [Wife]'s behalf from the day of the March 9 meeting through the time of her slipping into a coma and [Appellees'] acknowledgment thereof and agreement to act upon the communications.

[Appellant] asserts that [Husband's] email is not inadmissible hearsay; rather, the email was an instruction. [Appellant] explains that it is a statement made by an individual who [Appellees] knew was acting on behalf of Wife (as her agent) with authority to speak on her behalf (and where the many year relationship with [Appellees] established it to be their practice). [Appellant] asserts that [Husband's] emails are offered to show that the communications were made. He argues that by agreeing to act upon Husband's email of March 12th which communicated Wife's intent to amend her will, they acknowledged that that was her intent and that he was acting as her agent. . . .

[The trial court found] the aforementioned emails to be inadmissible hearsay offered for the truth of the matter contained therein and no exceptions to the hearsay rule apply. There is no evidence of record of any direct communication by Wife to her attorneys indicating an intent to change her Will to provide Husband with a described benefit. In fact, in his Amended Complaint, [Appellant] acknowledges that "[f]rom March 9 until [Wife] slipped into a coma on March 21, 2010, neither [Appellee] Moyer nor [Appellee] Smith had any direct communication with [Wife]." [Appellant]'s Amended Complaint at ¶22. [Appellant], in his response to [Appellees'] motion for summary judgment, presented no evidence of any direct contact between [Wife] and [Appellees] in which she expressed an intent to change her will to exercise the special appointment power in favor of Husband.

The absence of admissible evidence to establish any one of the elements of [Appellant's] Intentional Interference with Inheritance claim is fatal. Since the [c]ourt finds that the record is devoid of admissible evidence of specific intent on behalf of Wife

to change her Will to benefit Husband, [Appellant]'s claim must fail.

Trial Court Opinion, filed May 3, 2019, at 10-12 (emphasis in original) (footnote omitted).[19]

## Conclusion

In conclusion, we reverse summary judgment on and reinstate Counts I and V and their associated negligent supervision claims from Count IV. We affirm summary judgment and the dismissal of Count III and its associated negligent supervision claim from Count IV.

Affirmed in part. Reversed in part. Case remanded. Jurisdiction relinquished.

Judge Dubow joins.

Judge Nichols Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2020

_____

[19] The parties' briefs discussed the applicability of ***Agnew*** to Count III, but, as the trial court did not rely upon this case in its examination of this cause of action, we find their analysis to be moot. ***See*** Appellant's Brief at 43-44; Appellees' Brief at 41.