J-S23033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| OUTERLIMITS TECHNOLOGIES, LLC, SUCCESSOR IN INTEREST TO NEW FRONTIER ELECTRONICS, INC. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| COZEN O'CONNOR | : : | |
| Appellee | : | No. 169 EDA 2023 |

Appeal from the Order Entered November 17, 2022
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  2018-01947

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 8, 2023**

Appellant, Outerlimits Technologies, LLC, successor in interest to New Frontier Electronics, Inc., appeals from the order entered in the Bucks County Court of Common Pleas, which granted summary judgment in favor of Appellee, Cozen O'Connor.  We affirm.

The relevant facts and procedural history of this case are as follows.  In the early 2000s, Appellant engaged Appellee to represent it in a lawsuit involving a competitor.  Thereafter, Appellant routinely requested legal assistance from Appellee to secure patents and trademarks and for other intellectual property matters.  In 2014, Appellant realized that it had executed numerous flawed contracts that resulted in financial losses and the loss of intellectual property rights.  Appellant attributed the flaws in these contracts

to Appellee.

On December 1, 2018, Appellant filed a complaint in *assumpsit* against Appellee, alleging legal malpractice premised on a breach of contract. The complaint indicated that Appellant did not have a written contract with Appellee. Nevertheless, Appellant alleged that the parties engaged in "a course of dealing" wherein Appellant expected "competent and knowledgeable services in exchange for [Appellant's] payment of said services." (Complaint, filed 12/1/18, at ¶16). Appellant averred that "[t]hrough a series of contracts and over a period of years, unbeknownst to [Appellant], [Appellee] failed to perform their contractual duties regarding their representation of [Appellant] as contracted." (*Id.* at ¶17).

On January 3, 2019, Appellee filed preliminary objections alleging, *inter alia*, Appellant failed to state a breach of contract claim. On April 17, 2019, the court overruled the preliminary objections. Appellee filed an answer and new matter on May 14, 2019. Following discovery, Appellee filed a summary judgment motion on July 15, 2022. On November 9, 2022, the court conducted oral argument. At the conclusion of oral argument, the court took the motion under advisement. The court granted summary judgment in favor of Appellee on November 17, 2022. This appeal followed.[1] On December 21,

---

[1] The notice of appeal in the certified record is dated December 15, 2022, but the prothonotary did not docket the filing until January 13, 2023. On March 24, 2023, this Court directed Appellant to show cause as to why the appeal
*(Footnote Continued Next Page)*

2022, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely filed its Rule 1925(b) statement on January 10, 2023.

Appellant now raises two issues on appeal:

> Were [Appellee's] alleged failures to follow specific client requests sufficient to support an action for breaching specific contract terms?
>
> Was [Appellee's] failure to provide competent legal services in general sufficient to support an action for breaching the contract to provide professional services consistent with those expected of the profession at large implicit in every attorney-client relationship?

(Appellant's Brief at 6) (unnecessary capitalization omitted).

Appellant's issues are related, and we address them together. Appellant contends that "[a]n attorney who fails to follow specific instructions from their

---

should not be quashed as untimely. Appellant filed a response arguing that it timely e-filed the notice of appeal on December 15, 2022, but the prothonotary improperly rejected the filing with the explanation "other must be mailed in with proper fees." (Response, filed 4/10/23, at 2). Even if the prothonotary rejected the notice of appeal due to an improper filing fee, Appellant asserted that the filing should still be considered timely filed as of December 15, 2022. (*Id.* at 3) (citing *First Union Nat. Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 723 (Pa.Super. 2002)). In support of its assertions, Appellant's response included copies of emails, dated December 15, 2022, wherein the prothonotary's office: 1) acknowledged that it had received Appellant's filing; and 2) rejected the filing. (*Id.* at Exhibits A and B). Under these circumstances, we conclude there was a breakdown in the operations of the court, and we treat the appeal as timely filed. *See Nagy v. Best Home Services, Inc.*, 829 A.2d 1166, 1168 (Pa.Super. 2003) (excusing delay in filing notice of appeal because of breakdown in court's operations; prothonotary failed to time-stamp and docket timely, albeit flawed, notice of appeal).

client breaches specific contractual duties." (*Id.* at 17). Appellant asserts that it requested that Appellee "include specific terms" in an intellectual property transfer agreement. (*Id.* at 18). Appellant further asserts that it asked Appellee to "provide specific advice" about Appellant's rights under the agreement during the negotiating and drafting process. (*Id.*) Appellant claims that Appellee agreed to these requests, but Appellee did not comply. As such, Appellant maintains that Appellee "failed to follow the specific terms required by [Appellant] and therefore breached the contract to provide legal services." (*Id.* at 23).

Significantly, Appellant relies on *Gorski v. Smith*, 812 A.2d 683 (Pa.Super. 2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004), for the proposition that a failure "to provide legal services in a manner consistent with the profession at large" is a sufficient basis for a breach of contract claim. (*Id.* at 16). Appellant acknowledges our Supreme Court's decision in *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48 (2014), which held that contract claims are barred where the "gist of the action" sounds in negligence. Appellant insists, however, that *Bruno* does not apply here and Appellee's failure to follow specific client instructions constitutes a breach of contract. On this basis, Appellant concludes the trial court erred in granting the summary judgment motion. We disagree.

Our Supreme Court has clarified our role on appellate review in this case as follows:

On appellate review, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Valley National Bank v. Marchiano*, 221 A.3d 1220, 1222 (Pa.Super. 2019) (quoting *Summers v. Certainteed Corp.*, 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010)). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

In reviewing a trial court's grant of summary judgment,

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine

issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"[A]n action for legal malpractice may be brought in either contract or tort." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa.Super. 2007) (quoting *Garcia v. Community Legal Services Corp.*, 524 A.2d 980, 982 (Pa.Super. 1987)).

In Pennsylvania, an individual who has taken part in an attorney-client relationship may sue his attorney for malpractice under either a trespass or assumpsit theory, each of which requires the proof of different elements. In a trespass action alleging legal malpractice concerning a civil matter, the plaintiff must establish three elements in order to recover: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that the attorney's failure to exercise the requisite level of skill and knowledge was the proximate cause of damage to the plaintiff. These elements must be proven by a preponderance of the evidence. An attorney will be deemed "negligent" if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances.

*Fiorentino v. Rapoport*, 693 A.2d 208, 212 (Pa.Super. 1997), *appeal*

*denied*, 549 Pa. 716, 701 A.2d 577 (1997) (internal citations omitted).

> A legal malpractice claim based on breach of contract, involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. With respect to a legal malpractice claim based on breach of contract, this Court has stated the following:
>
>> [T]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide … her best efforts and fails to do so, an action in *assumpsit* will accrue. An attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

**Dougherty v. Pepper Hamilton LLP**, 133 A.3d 792, 796 (Pa.Super. 2016)

(internal citations and quotation marks omitted).

"In general, courts are cautious about permitting tort recovery based on contractual breaches." **Johnson v. Toll Brothers, Inc.**, 2023 PA Super 181, *3 (filed Sept. 26, 2023) (quoting **Hart v. Arnold**, 884 A.2d 316, 339 (Pa.Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006)).

> In keeping with this principle, this Court has recognized the "gist of the action" doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims. The conceptual distinction between a breach of contract claim and a tort claim has been explained as follows:
>
> Although they derive from a common origin, distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals…. To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would

erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

However, a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus. In other words, **a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts**, and not by the larger social policies embodied by the law of torts.

"Gist" is a term of art in common law pleading that refers to "the essential ground" or object of the action in point of law, without which there would be no cause of action. The "gist of the action" test … is a general test concerned with the "essential ground," foundation, or material part of an entire "formal complaint" or lawsuit.

*Hart, supra* at 339-40 (internal citations omitted) (emphasis in original).

The gist of the action doctrine "maintain[s] the conceptual distinction between breach of contract claims and tort claims[.]" *McShea v. City of Philadelphia*, 606 Pa. 88, 96, 995 A.2d 334, 339 (2010) (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super. 2002)). "[M]erely because a cause of action between two parties to a contract is based on the actions of the defendant undertaken while performing his contractual duties, this fact, alone, does not automatically characterize the action as one for breach of contract." *Bruno, supra* at 103, 106 A.3d at 63.

The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the

- 8 -

claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

\* \* \*

Notably, and of relevance to the case at bar, our prior decisions … underscore that **the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.** Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party[.]

\* \* \*

Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 111-14, 106 A.3d at 68-70 (internal citations and footnote omitted)

(emphasis added).

In ***Gorski, supra***, on which Appellant primarily relies, the Gorskis were real estate developers who retained Attorney Jenkins to negotiate a land sales agreement with a buyer named Iacobucci. In the agreement, the Gorskis warranted that they had obtained approval from governmental authorities so that Iacobucci could obtain building permits to construct residential units on the property. After the parties signed the agreement, however, the local sewer authority would not approve Iacobucci's request for subdivision of the property without the developer paying for certain upgrades to the local pumping station. Iacobucci argued that the Gorskis should pay for the upgrades because they warranted that they would deliver a fully approved subdivision. In turn, the Gorskis asked Attorney Jenkins to initiate legal proceedings to release them from the land sales agreement. Iacobucci countersued for breach of contract, and the court ruled in favor of Iacobucci in both actions.

The Gorskis then sued Attorney Jenkins for breach of contract and negligence in connection with the land sales agreement and the subsequent trial involving Iacobucci. Before trial commenced, Attorney Jenkins died. Lawrence Smith, Attorney Jenkins' executor, was substituted as a defendant. At trial, the jury found Attorney Jenkins was negligent in his negotiation of the land sales agreement and in representing the Gorskis against Iacobucci. The jury also found that Attorney Jenkins breached his contractual obligation to

provide effective legal representation in connection with the negotiation of the land sales agreement.

On appeal, Mr. Smith argued that a breach of contract claim can only be maintained "when the attorney fails to follow a specific instruction of the client." **Gorski, supra,** at 691. This Court responded:

> [E]very contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large. Thus, when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large. Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large.

**Id.** at 694. Because the evidence established that Attorney Jenkins failed to make the Gorskis fully aware of their obligations under the agreement prior to their having signed it, Attorney Jenkins failed to fulfill "his contractual obligation to the Gorskis to provide legal services in a manner consistent with the profession at large." **Id.** at 696.

Twelve years after this Court's decision in **Gorski**, our Supreme Court decided **Bruno**. The Brunos had purchased a home and acquired a homeowner's insurance policy from Erie Insurance Company ("Erie"). The policy obligated Erie to pay up to $5,000.00 for damage caused to the property by mold. The rider also required that Erie pay the costs of testing for mold and, if mold was present, its removal. In October 2007, Mr. Bruno discovered

mold on the property and filed a claim with Erie, which sent an adjuster and an engineer ("Rudick") to inspect the property. The adjuster and Rudick informed Mr. Bruno that "the mold was harmless and that they should continue tearing out the existing paneling [and] that health problems associated with mold were a media frenzy and overblown." ***Bruno, supra*** at 84, 106 A.3d at 51. The adjuster subsequently refused payment of the claim.

Based on the assurances of the adjuster and Rudick, the Brunos continued to live in the home. In January 2008, after suffering severe respiratory ailments, the Brunos had the mold tested at their own expense, and they discovered that the mold was toxic. Thereafter, the Brunos demanded that Erie pay out their claim, which it did in April 2008. Next, the Brunos filed a complaint against Erie, Rudick, and the prior owners of the property. The complaint included a negligence claim against Erie and Rudick. The Brunos alleged:

> Erie engaged in the following negligent acts and omissions which caused them damage and injury: failure to recognize the nature and severity of the mold problem at the premises; misleading [the Brunos] concerning the nature of the mold problem in general and as it related to their health and home; minimizing the dangers and consequences of the mold infestation when it knew or should have known otherwise; and the creation or exacerbation of a dangerous condition.
>
> * * *
>
> Additionally, in count 10 of their complaint, the Brunos raised a claim against Rudick for professional negligence, alleging, *inter alia*, that it was negligent for: delaying and then improperly conducting mold testing of the Bruno home;

- 12 -

failing to properly read, interpret, and analyze the test results; delaying the reporting of the test results to the Brunos; failing to recognize and report to the Brunos the danger to their health and to the premises created by the mold; and minimizing the dangers and consequences posed by the mold infestation, when it knew or should have known otherwise.

*Id.* at 86-87, 106 A.3d at 52-53 (internal record footnotes, citations, and quotation marks omitted).

Erie filed preliminary objections, which the trial court sustained. The court determined that the gist of the action doctrine barred the Brunos from bringing a negligence claim against Erie where the claims emanated from a breach of Erie's contractual obligations. The court reasoned that "[b]ut for the insurance policy, Erie would owe [the Brunos] no obligation as defined by larger social policies embodied by tort laws[.]" *Id.* at 87, 106 A.3d at 53. On appeal, this Court affirmed the dismissal of the Brunos' negligence claim.

Our Supreme Court, however, reversed and remanded the case for further consideration. The Court held that the Brunos' claim sounded in tort, and it emphasized

> the substance of the Brunos' allegations is not that [Erie] failed to meet [its] obligations [to investigate the claim made by the Brunos under their policy]; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the

- 13 -

insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Id.* at 116, 106 A.3d at 71.

Instantly, the trial court found that the gist of Appellant's action sounded in tort, and it granted summary judgment in favor of Appellee:

> Appellant argued that the facts of the instant matter are similar to the facts in **Gorski**, and as such an action in *assumpsit* is appropriate. However, it is not settled law. Numerous courts have reviewed **Gorski** in conjunction with **Bruno**'s gist of the action analysis and questioned whether **Gorski** remains valid law:
>
> > [C]ourts generally agree that the gist of the action may bar contract claims if the true nature of the duty breached is in tort. [...] Although not supplying concrete precedent, the non-precedential decisions clearly show a trend of incorporating **Bruno** and rejecting **Gorski**'s reasoning, and trial courts have cited the non-precedential opinions as persuasive.[2]
>
> *     *     *
>
> In this matter, Appellant claimed that when a client

---

[2] Our research confirms the trial court's averment regarding this Court's embrace of **Bruno** in its recent, non-precedential decisions. **See Corliss v. Lee A. Ciccarelli, PC**, 272 A.3d 457 (Pa.Super. 2022) (unpublished memorandum) (noting **Bruno** Court held that language used in complaint determines whether case is brought in tort or breach of contract; **Bruno** departed from previously decided cases, which ostensibly allowed allegations of both tort and breach of contract together in civil actions); **Johnstone v. Raffaele**, 241 A.3d 479 (Pa.Super. 2020) (unpublished memorandum) (observing that "gist of the action" doctrine was not involved in **Gorski**; as stated in **Bruno**, contract claim arises from promise to do something specific that is not otherwise generally required of attorney). **See also** Pa.R.A.P. 126(b) (stating non-precedential decisions of Superior Court filed after May 1, 2019 may be cited for persuasive value).

identifies a particular issue of concern to counsel, and counsel fails to adequately address that concern, this incompetence amounts to a breach of a contractual provision. Looking to Appellant's complaint, Appellee assisted in negotiating licensing agreements for Appellant, and in those agreements there existed a flaw that failed to protect Appellant's interests.

\* \* \*

Appellee's shortcomings constitute a failure to exercise the requisite skill and knowledge that is expected of all attorneys. Therefore, while Appellee failed to adhere to the general standard of care lawyers owe to every client, Appellee did not breach a specific contractual provision or promise. In line with Pennsylvania caselaw, an action in *assumpsit* simply was not available to Appellant. As such, any genuine issue of fact as to whether an implied contract existed is immaterial because, regardless, Appellee failed to adhere to a generalized standard of care.

(Trial Court Opinion, filed 2/7/23, at 8-11) (internal citations, quotation marks, and some capitalization omitted).

Here, we cannot say that the court erred in its application of the gist of the action doctrine. We emphasize that the substance of the allegations in the complaint confirms that Appellee's purported failure to exercise the requisite level of skill and knowledge was the basis for Appellant's request for damages. **See Fiorentino, supra**. Specifically, Appellant averred that Appellee "never presented … a contract related to [Appellee's] services as they related to … assisting [Appellant] in securing patents, trademarks and other related intellectual property issues." (Complaint at ¶13). Appellee led Appellant "to believe that [Appellee] had experience in the transactions contemplated when in fact [Appellee] had little to no experience in such

transactions." (*Id.* at ¶18). Appellant asserted that Appellee "failed to advise Appellant as [to] what portions of the contracts and transactions contemplated would have or might have a negative impact upon [Appellant]." (*Id.* at ¶26). Likewise, Appellant alleged that Appellee "failed to actually read, review and advise the contracts contemplated in their entirety," and Appellee "failed to advise [Appellant] of the differences of the laws of New York and Pennsylvania as they apply to mergers and acquisition contracts." (*Id.* at ¶¶27, 30).

These averments support the trial court's conclusion that an action in *assumpsit* was unavailable to Appellant. ***See Dougherty, supra***; ***Fiorentino, supra***. Rather, the alleged contract merely served as "the vehicle" to establish the relationship between the parties, during the existence of which Appellee allegedly committed a tort. ***See Bruno, supra***. On this record, the court did not err in concluding that that the gist of the action sounded in tort.[3] ***See Hart, supra***. We conclude that the court properly granted Appellee's motion for summary judgment. ***See Valley National Bank, supra***; ***Chenot, supra***. Accordingly, we affirm.

Order affirmed.

---

[3] Further, we note that different statutes of limitations apply to tort and contract actions. An action sounding in tort is subject to a two-year statute of limitations, whereas a contract claim is subject to a four-year statute of limitations. ***See*** 42 Pa.C.S.A. §§ 5524, 5525. Here, it appears that Appellant filed its complaint beyond the two-year limitations period for a tort action, but within the four-year period for a breach of contract action. Nevertheless, we reiterate that the facts do not support a breach of contract claim against Appellee.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/8/2023